STATE OF CONNECTICUT *v.* ALLEN BOWENS
(8912)

DUPONT, C. J., DALY and HEIMAN, Js.

Argued March 18—decision released May 21, 1991

*Neal Cone,* deputy assistant public defender, with whom were *Kent Drager,* assistant public defender, and, on the brief, *G. Douglas Nash,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Jr.,* assistant state's attorney, and *Donald A. Browne,* state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the sale of narcotics and possession of narcotics with intent to sell by a person who is not drug-dependent, both in violation of General Statutes § 21a-278 (b). The defendant claims that the trial court (1) incorrectly denied his motion for acquittal based upon insufficiency of the evidence, (2) improperly allowed the state's attorney to comment on the defendant's refusal to testify, (3) improperly charged the jury on the defendant's unexplained flight, (4) incorrectly instructed the jury as to reasonable doubt, and (5) improperly permitted the state's attorney to mislead the jury in closing arguments on the meaning of proof beyond a reasonable doubt.[1] We disagree and affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On May 6, 1988, at about 10:30 p.m. Sargeant Richard Herlihy of the Bridgeport police department was parked in an unmarked car watching a well lit area

---

[1] Prior to argument, the defendant's counsel abandoned the final issue raised relating to the defendant's sentencing.

in and around building nineteen in the P.T. Barnum housing project located in Bridgeport. Herlihy's unobstructed observation point was about 100 feet from building nineteen. On that night, Herlihy watched three black males outside the hallway at the eastern portion of building nineteen; one was the defendant and the other two were the Reddick brothers, whom Herlihy recognized as reputed drug dealers. All three lived in that building. The defendant was standing near the entrance to the hallway and the Reddick brothers stood between fifteen and twenty feet away from him. Herlihy observed a successive pattern in which seven persons approached the defendant on foot, and entered the hallway with him for two or three minutes before exiting and leaving. Subsequently, a Ford LTD with two occupants came into the area, stopped, and the driver, a white male, entered the hallway with the defendant. Two to three minutes later, the driver emerged, went back to his car and drove off. Herlihy radioed other police units to stop the Ford LTD, and called for backup assistance to arrest the defendant.

Officer George Vivo received Herlihy's radio call at about 10:30 p.m. and thereafter stopped the Ford LTD. The driver and a white female passenger were identified respectively as Peter Elevecky and Monica Ivan. Elevecky admitted that he had been at the P.T. Barnum housing project, had exited his car and purchased heroin with a $20 dollar bill from a black man, but could not identify the seller. Elevecky had earlier that day taken heroin and cocaine before later making the purchase at P.T. Barnum. Ivan testified that she had gone to P.T. Barnum with Elevecky, and that he had exited the car and returned with heroin in his possession. When Vivo stopped the pair, Ivan took a packet of drugs off the car seat and attempted to eat them, but coughed them out. This packet was later tested and was found to contain heroin. Vivo testified that it was simi-

lar in size to the twenty-nine packets of drugs later seen dropped by the defendant as he fled.

Officer Peter Gelozin responded to Herlihy's radio call to pursue the defendant. Gelozin was told to look for a black male wearing a blue and white jacket and blue pants at building nineteen. When Gelozin arrived in an unmarked car, he spotted the defendant, who fit Herlihy's description. Gelozin left his car and quickly walked toward the defendant. Gelozin was dressed in his black police tactical uniform with police department emblems and his badge on the front, and was wearing his holster and gun. The defendant turned and fled into the hallway of building nineteen with Gelozin in pursuit yelling "police." Gelozin chased the defendant up three flights of stairs and saw him drop a brown paper bag from his right hand just before entering apartment 305. Gelozin entered the apartment and arrested the defendant, afterward retrieving the brown paper bag the defendant had dropped. In the brown paper bag, Gelozin found twenty-nine small glassine envelopes marked with the words "power" and "obsession" and containing a white powder substance, later identified as heroin. Each packet was deemed to have a street value of $20. At the police station, $103 was seized from the defendant, consisting of four $20 bills, two $10 bills and three $1 bills.

I

The defendant first claims that the evidence adduced at his trial was insufficient to sustain his conviction on the charge of sale of narcotics by a person who is not drug-dependent, and that this improper conviction tainted the jury's verdict on the charge of possession with intent to sell narcotics by a person who is not drug-dependent. The defendant concludes, therefore, that the trial court should have granted his motion for acquittal. We disagree.

This court undertakes a two-part analysis when reviewing claims of insufficient evidence. First, we review the trial evidence, construing it in the most favorable manner reasonably possible to support the jury's verdict. Second, we ascertain whether any jury could reasonably have concluded that the cumulative effect of the established evidence, and the inferences reasonably drawn from those evidentiary facts, established guilt beyond a reasonable doubt. *State* v. *King,* 216 Conn. 585, 600–601, 583 A.2d 896 (1990); *State* v. *Turner,* 24 Conn. App. 264, 587 A.2d 1050 (1991). "Where a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt." *State* v. *McDonough,* 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988). Thus, each essential element of the crime must still be proven beyond a reasonable doubt; *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *King,* supra, 601; and a jury may not speculate or resort to conjecture but may draw only reasonable, logical inferences from the proven facts. *State* v. *King,* supra.

The defendant was charged in the first count with sale of a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[2]

[2] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any nar-

In his claim, the defendant argues that the state failed to prove that the defendant sold narcotics to Elevecky because there was no evidence presented from which a jury could reasonably infer that Elevecky bought the narcotics in his possession from the defendant that night. Essentially, the defendant's claim is that the state failed to prove the identity of the seller, and therefore did not prove the essential element of delivery to establish a sale.[3] *State* v. *Jackson,* 13 Conn. App. 288, 294, 535 A.2d 1327 (1988). In order to convict the defendant, the state had to prove beyond a reasonable doubt that a sale occurred, that it was the defendant who delivered to Elevecky the heroin that Elevecky bought that night at the P.T. Barnum housing project and not some other black male who might have been dealing drugs within the project.

Herlihy testified as an expert police witness in drug enforcement that the pattern of the defendant's behavior observed that night led him to the opinion that the defendant was engaging in the sale of drugs. Although Herlihy did not observe an actual sale because of the defendant's use of a darkened hallway in building nineteen, the circumstances he observed that night clearly supported his opinion of a sale, by logical inference. The defendant was with two other known drug dealers, he met quickly with a succession of people for two to three minute periods in the darkened hallway, after which the individuals quickly left the scene on foot. Finally, the defendant fled when approached by a uniformed policeman who subsequently saw the defend-

---

cotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years."

[3] General Statutes § 21a-240 (50) defines sale as used in General Statutes § 21a-278 (b) as "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ."

ant discard a paper bag which held twenty-nine glassine envelopes of heroin. Thus, there was ample evidence to support Herlihy's expert opinion that the defendant was selling drugs that night, an opinion that the jury could use in reaching its verdict. See *State v. Holder*, 18 Conn. App. 184, 190, 557 A.2d 553 (1989); *State v. Holeman*, 18 Conn. App. 175, 177–81, 556 A.2d 1052 (1989) (a companion case to *Holder*).

Herlihy further testified that, during his forty-five minutes of watching the defendant, he witnessed eight transactions, the first seven by persons on foot and the eighth by a white male driving a Ford LTD, with a passenger in the front seat. Herlihy observed this male exit the Ford LTD, enter the hallway with the defendant and leave after two or three minutes as the other seven people had done. Ivan testified that Elevecky returned to the car with heroin. After Herlihy saw the white male return to the car and drive away, he broadcasted to other police units to stop the car.

Herlihy testified that it was about 10:30 p.m. at night when these events occurred. Vivo, who had stopped Elevecky and Ivan, also testified that it was about 10:30 p.m. Elevecky and Ivan both testified that Elevecky had bought a $20 packet of heroin from a black male in the P.T. Barnum housing project. This packet was similar in size to those that had been in the possession of the defendant before he dropped them while being pursued by a police officer. The proximity in time between Vivo's arrest of Elevecky and Ivan, Herlihy's observations of them and his radio broadcast, and the evidence of their sex and race provided circumstantial evidence from which a jury could reasonably infer that Elevecky was the white male seen by Herlihy with the defendant, and that Elevecky purchased drugs at the P.T. Barnum housing project that night from the defendant.

These various pieces of circumstantial evidence offered by the state, their cumulative effect, and the reasonable inferences derived therefrom, when viewed in the most favorable manner reasonably possible, allowed the jury to conclude beyond a reasonable doubt that Elevecky and the white male seen with the defendant by Herlihy were the same man, and that the defendant's sale of narcotics to Elevecky that night fell within the definition of "sale" contained in General Statutes § 21a-240 (50).

This case is factually dissimilar to *State* v. *Mierez,* 24 Conn. App. 543, 590 A.2d 469 (1991), because here twenty-nine individual packets of heroin were in the possession of the defendant as opposed to one plastic bag in *Mierez.* Furthermore, the packets here were of the same size as that found in the possession of Elevecky, whereas in *Mierez,* no narcotics were found in the possession of the alleged buyer.

The defendant's claim that the jury's verdict on the charge of possession of narcotics with intent to sell by a person who is not drug-dependent was tainted is unfounded because the jury had sufficient evidence upon which to base its guilty verdict on the charge of narcotics sale. Moreover, the large number of packets in the defendant's possession is the fact from which the inference of possession with intent to sell can be drawn. Thus, the jury's verdict on the charge of possession with intent to sell was supported by the evidence.

II

The defendant next claims that the state improperly commented on the defendant's failure to testify on his own behalf. The defendant failed to preserve this claim properly at trial and requests review under the *Evans-Golding* criteria. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). Pursuant to the court's deci-

sion in *Golding,* supra, we need not consider an unpreserved claim if it is not of "constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding,* supra, 239. We conclude that the defendant's claim is not of constitutional magnitude, although he alleges that it is.

In closing arguments, the prosecutor asked the jury to consider the $103 found on the defendant. Elevecky testified that he paid $20 for narcotics and four $20 bills were found on the defendant. The prosecutor stated that the $103 was unexplained. General Statutes § 54-84 prohibits any comment by the court or prosecutor upon the defendant's refusal to testify.

The test for evaluating the prosecutor's remark is whether "the language used . . . manifestly [was] intended to be, or was . . . of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State* v. *DeMartino,* 7 Conn. App. 292, 295, 508 A.2d 809 (1986). A prosecutor is prohibited from asking for explanations which only a defendant can provide because such questions are an indirect comment on the defendant's failure to testify. Id.

In *State* v. *Allen,* 9 Conn. App. 169, 181, 517 A.2d 1043 (1986), rev'd on other grounds, 205 Conn. 370, 533 A.2d 559 (1987), the prosecutor argued to the jury that he was still waiting for an explanation as to why two witnesses identified the defendant in a photographic array, why the defendant's car was found abandoned one mile from the crime scene and why the defendant fled the state. These arguments were not deemed to be unconstitutional comments upon the defendant's refusal to testify. In *State* v. *Kluttz,* 9 Conn. App. 686, 705, 521 A.2d 178 (1987), the state argued to the jury that the defendant had not presented a reasonable explanation for a collision. This argument was

held not to be an impermissible comment on the defendant's refusal to testify but referred to the state's case. In *State* v. *Iovieno,* 14 Conn. App. 710, 724–25, 543 A.2d 766 (1988), the prosecutor's comment to the jury, that the defendant could not explain why his fingerprint was found in the house, was held to be acceptable. We conclude, therefore, that the prosecutor's comment here was not intended to be and was not of such character that the jury would naturally and necessarily take it to implicate the defendant's refusal to testify. Thus, we do not find any infringement by the state of the defendant's constitutional rights and decline further review. *State* v. *Golding,* supra.

## III

### A

The defendant next claims that the trial court's instructions to the jury that flight, if unexplained, tends to prove consciousness of guilt, violated his right not to testify. This claim was not preserved at trial and the defendant requests review under the *Evans-Golding* criteria. *State* v. *Golding,* supra; *State* v. *Evans,* supra. The trial court's instruction on unexplained flight has been approved by the Connecticut Supreme Court. *State* v. *Holloway,* 209 Conn. 636, 650–52, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989); *State* v. *Reid,* 22 Conn. App. 321, 327–28, 577 A.2d 1073 (1990). Because this instruction has been found not to be violative of a constitutional right, we decline any further review. *State* v. *Golding,* supra.

### B

The defendant further claims that the court's instructions defining reasonable doubt were improper because the court employed the tipping of the scales analogy and described proof beyond a reasonable doubt as "a

strong and abiding conviction that the accused is guilty."[4] The defendant argues that the inclusion of this language in the jury charge had the effect of shifting, diluting and reversing the state's constitutional burden to prove the defendant guilty beyond a reasonable doubt. This claim was not preserved at trial and the defendant requests review under the *Evans-Golding* criteria. *State* v. *Golding,* supra; *State* v. *Evans,* supra. We conclude that the defendant's fundamental constitutional right that the state establish his guilt beyond a reasonable doubt; *In re Winship,* supra, 361; was not violated.

---

[4] The trial court instructed the jury in part: "What does that concept mean, beyond a reasonable doubt? We recognize that proof beyond a reasonable doubt is different than proof beyond all doubt. It is a high degree of proof nevertheless. It's beyond speculation. It's beyond probable doubt. It's beyond suspicion, speculation for sure. Probable doubt, you've got to go beyond it.

"On the civil side, you have to determine civil cases by a preponderance of the evidence, an overview of all the evidence in the case. And if you were to analogize on that and put it into a scale, *a slight tipping of the scale* is inclining in favor of someone or against someone, in a civil case, it's sufficient for a jury to meet it's test of preponderance of the evidence, a fair preponderance, a slight convincing of who has the weight of your position.

*"On the criminal side, it is a substantial tipping of the scales. You have to be satisfied as to that.* Reasonable doubt is one that is based upon reason and grows out of the evidence or lack of evidence in a case. A reasonable doubt is not such a doubt as may be raised by one questioning merely for the sake of raising a doubt.

"It is not a surmise. It is not a guess or conjecture. It is not any hesitation springing from any feelings of sympathy or pity for the accused or any other persons who might be in any way affected by your decision.

"A reasonable doubt is one that is held by a juror in the light of the evidence and is honestly entertained by that juror after a fair comparison and careful examination of the entire evidence in the case. It is a doubt for which you can, in your own mind, conscientiously find and assign a reason.

"Proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which tends to support and is consistent with the defendant's guilt and is inconsistent with any other rational conclusion.

"Proof beyond a reasonable doubt can probably best be described as that proof which leaves you with a strong and abiding conviction that the accused is guilty of the crimes with which he has been charged." (Emphasis added.)

Individual jury instructions are not usually judged in isolation from the entire charge. *State* v. *Thomas,* 214 Conn. 118, 119, 570 A.2d 1123 (1990). Nor is the charge to be critically dissected for purposes of discovering possible inaccuracies of statement. *State* v. *Kwaak,* 21 Conn. App. 138, 160, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). The jury instructions must be read in their entirety to ascertain whether the jury was guided to a correct verdict. *State* v. *Monar,* 22 Conn. App. 567, 570–71, 579 A.2d 104 (1990).

The Supreme Court has noted that " ' "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury. . . . Judicial attempts to clarify the meaning of the phrase 'reasonable doubt' by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead." ' " (Citations omitted.) *State* v. *Butler,* 207 Conn. 619, 636, 543 A.2d 270 (1988).

Regarding the scales analogy, the Supreme Court disapproved its use in *State* v. *Smith,* 183 Conn. 17, 27, 438 A.2d 1165 (1981), when the court instructed that " '[f]or the State to prevail, you must find the scales tipped beyond a reasonable doubt.' " The trial court, here, did not refer to tipping the scales beyond a reasonable doubt, but rather attempted to clarify that the state had to tip the scales substantially, in order to meet its burden. Although we disapprove of the analogy employed, we do not believe it rises to the level of constitutional or reversible error in an otherwise adequate charge on reasonable doubt. See, e.g., *State* v. *Johnson,* 214 Conn. 161, 179–80, 571 A.2d 79 (1990); *State* v. *Smith,* 210 Conn. 132, 150, 554 A.2d 713 (1989).

The trial court's description of proof beyond a reasonable doubt as a "strong and abiding conviction" is not language that could possibly dilute the state's burden of proof. Similar descriptive phrases have been

used by trial courts without infringing on the defendants' rights, although such deviations have been reviewed with disapproval. See, e.g., *State* v. *Johnson,* supra, 178, 178 n.15, 179–80. Viewing the charge as a whole, we are satisfied that the jury was adequately and fairly instructed on the state's burden of proof beyond a reasonable doubt.

## IV

The defendant finally claims that the prosecutor's comments made during closing arguments regarding the meaning of proof beyond a reasonable doubt constituted a violation of the defendant's constitutional right to a fair trial. The defendant again seeks review under the *Evans-Golding* criteria for his unpreserved claim. *State* v. *Golding,* supra; *State* v. *Evans,* supra. Although the prosecutor's comments on reasonable doubt were inartful, we conclude that they do not rise to the level of constitutional harm that would deprive the defendant of a fair trial or due process. See *State* v. *Torrice,* 20 Conn. App. 75, 92–94, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989).

During the closing argument, the prosecutor told the jurors that "[i]t's not your job to be a doubting Thomas."[5] Describing reasonable doubt, the prosecutor employed the analogy of driving a car and the judgment a driver utilizes to drive safely. See, e.g., id., 93. The prosecutor also encouraged the jurors to follow the "feeling in your gut" to determine whether the state had proven the defendant's guilt beyond a reasonable doubt. Finally, the prosecutor did tell the jurors to apply the law that the trial court would give them on rea-

[5] See the Gospel according to John 20:24-29, which recounts the story of the disciple of Jesus, named Thomas, who would not believe that Jesus had risen from the dead until he saw the risen Jesus and touched his crucifixion wounds.

sonable doubt and, if it conflicted with his arguments, to disregard his comments and follow the trial court's charge.

" ' "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." ' " *State* v. *Richardson,* 214 Conn. 752, 761, 574 A.2d 182 (1990). Some latitude is allowed in counsel's closing argument for legitimate and fair comment that cannot always be determined precisely by strict rules, and for the zeal of an advocate engrossed in the heat of argument. *State* v. *Evans,* 10 Conn. App. 605, 609, 524 A.2d 1165 (1987). Although we do not approve of the prosecutor's comments regarding reasonable doubt, they do not rise to the level of constitutional harm. Moreover, the prosecutor informed the jury that it was to follow the law as the trial court defined it, not as the prosecutor did, if it differed. The trial court correctly instructed the jurors on reasonable doubt and they are presumed to have followed this charge. *State* v. *Torrice,* supra, 94.

The judgment is affirmed.

In this opinion the other judges concurred.