STATE OF CONNECTICUT v. CHRISTOPHER TAFT
(9136)

SPALLONE, DALY and HEIMAN, Js.

Submitted on briefs May 29—decision released August 27, 1991

*Patricia Buck Wolf,* special public defender, and *Grace A. Luppino,* special public defender, filed a brief for the appellant (defendant).

*Michael Dearington,* state's attorney, *Elpedio Vitale,* assistant state's attorney, and *Marjorie Allen Dauster,* deputy assistant state's attorney, filed a brief for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49[1]

---

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

General Statutes § 53a-49 provides in pertinent part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything

and of carrying a pistol without a permit in violation of General Statutes § 29-35.[2] The defendant claims (1) that there was insufficient evidence to find him guilty beyond a reasonable doubt of both crimes, and (2) that the trial court incorrectly allowed a witness to testify about alleged threats made against the witness before testifying at trial, thereby prejudicing the defendant. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In the early morning hours of June 10, 1987, the victim, Sylvester Gardner, Jr., was parked in a car with his former girl friend, Robin Stanford, in front of her residence at 36 Tilton Street in New Haven. While sitting in the car with the window rolled down, Gardner felt something touch his head and then heard a voice say "I ought to blow your . . . brains out." Gardner turned and saw a black gun pointed at him from outside the car. Gardner identified the voice as belonging to the defendant, with whom he was acquainted. Gardner testified that the length of the gun's barrel was less than twelve inches. Stanford then left the car and was followed by the defendant as she returned to her apartment. As Gardner was driving away, the defendant pointed his gun at him. Gardner saw three flashes from the gun and heard three pops, but none of these shots hit him or his car.

Gardner then decided to return to Stanford's apartment. Outside Stanford's apartment, Gardner saw the defendant climbing up the front porch of the apartment. While running upstairs to Stanford's apartment Gardner heard screams. As Gardner approached the apart-

which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person . . . without a permit to carry the same . . . ."

ment, he saw the defendant leave the apartment and run past him. Gardner then pursued the defendant, whereupon the defendant turned and fired a shot at Gardner from about thirty feet. Again, Gardner saw a flash and heard a pop but was not hit.

Officer Brian Donnelly of the New Haven police department arrived at the scene. After questioning Gardner and other witnesses about the incident, Donnelly searched the area for a .38 caliber snub nose revolver but was unable to find it. Donnelly was not able to find any spent bullet casings from the described gunfire, nor was he able to find any bullets or bullet holes in the victim's car. Donnelly testified that casings from a .38 snub nose revolver would have to be manually ejected from the gun's cylinder. Donnelly also testified that the failure to find bullet casings or holes was common when investigating a shooting scene. The defendant possessed neither a state nor a city permit to carry a pistol.

I

The defendant claims that there was insufficient evidence to sustain a verdict of guilty of either crime and that the trial court should have granted his motion for judgment of acquittal.

When reviewing claims of insufficient evidence, this court employs a two part analysis. "First, we review the trial evidence, construing it in the most favorable manner reasonably possible to support the jury's verdict. Second, we ascertain whether any jury could reasonably have concluded that the cumulative effect of the established evidence, and the inferences reasonably drawn from those evidentiary facts, established guilt beyond a reasonable doubt." *State* v. *Bowens,* 24 Conn. App. 642, 646, 591 A.2d 433 (1991); *State* v. *King,* 216 Conn. 585, 600–601, 583 A.2d 896 (1990). It should be

noted that "each essential element of the crime must still be proven beyond a reasonable doubt . . . and a jury may not speculate or resort to conjecture but may draw only reasonable logical inferences from the proven facts." (Citations omitted.) *State* v. *Bowens,* supra; *State* v. *King,* supra.

## A

The defendant was convicted of criminal attempt to commit assault with intent to cause serious physical injury to another by means of a deadly weapon. General Statutes §§ 53a-49, 53a-59 (a) (1). General Statutes § 53a-49 (a) (2) requires the state to prove that the defendant "intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." The defendant argues that the state failed to prove beyond a reasonable doubt that his actions constituted a substantial step in a course of conduct intended to result in the commission of an assault.

An "attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption . . . or for other extrinsic cause." *State* v. *Wilson,* 30 Conn. 500, 506 (1862); *State* v. *Turner,* 24 Conn. App. 264, 269, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991). The defendant's actions "must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the [defendant] at least to be possible of commission by the means adopted." *State* v. *Mazzadra,* 141 Conn. 731, 736, 109 A.2d 873 (1959); *State* v. *Turner,* supra. In order to be considered a "substantial step," the defendant's acts must be " 'strongly

corroborative of the actor's criminal purpose.' . . .
'The application of this standard will, of course, depend
upon the nature of the intended crime and the facts
of the particular case. . . . [T]his standard properly
directs attention to overt acts of the defendant which
convincingly demonstrate a firm purpose to commit a
crime.' " (Citations omitted.) *State* v. *Green,* 194 Conn.
258, 276–77, 480 A.2d 526 (1984), cert. denied, 469 U.S.
1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985); *State*
v. *Turner,* supra, 269–70; *State* v. *Washington,* 15
Conn. App. 704, 717, 546 A.2d 911 (1988).

Our review of the evidence satisfies us that any
rational trier of fact could have found ample facts to
support proof of the essential elements of the crime
of criminal attempt to commit assault beyond a rea-
sonable doubt.

## B

The defendant also challenges the sufficiency of the
evidence as to his conviction of carrying a pistol with-
out a permit in violation of General Statutes § 29-35.
The defendant claims that the state failed to prove
beyond a reasonable doubt that he was carrying a fire-
arm having a barrel less than twelve inches in length.
According to General Statutes § 29-27[3] a pistol or
revolver constitutes "any firearm having a barrel less
than twelve inches in length." This statutory defini-
tion of a pistol or a revolver is specifically applicable
to § 29-35, the statute under which the defendant was
convicted. *State* v. *Brown,* 173 Conn. 254, 260, 377 A.2d
268 (1977). Because the state must prove each element
of an offense beyond a reasonable doubt, we agree with
the defendant that the state must prove that the gun
used by him met this statutory definition. *State* v. *Gar-
cia,* 7 Conn. App. 367, 375, 509 A.2d 31 (1986).

---

[3] General Statutes § 29-27 provides in pertinent part: "The term 'pistol'
and the term 'revolver,' as used in sections 29-28 to 29-38, inclusive, mean
any firearm having a barrel less than twelve inches in length."

There is sufficient evidence in this case to support the defendant's conviction under § 29-35. The state offered evidence to prove that the defendant did not have a state or city permit to carry a pistol. Furthermore, the defendant's reliance on *State* v. *Brown,* supra, is misplaced. In that case, the defendant's conviction under § 29-35 was reversed because the state failed to prove that the pistol's barrel was less than twelve inches in length. In *State* v. *Brown,* supra, 260–61 n.5, as in this case, the pistol was never recovered. The witness in *State* v. *Brown,* supra, however, described the pistol only " 'as a short one, which "didn't have a long barrel." ' " Thus, in *State* v. *Brown,* supra, there was no evidence that the barrel of the pistol was less than twelve inches. In contrast, Gardner had a clear view of the pistol and testified specifically that the barrel was less than twelve inches in length.

When addressing a claim of insufficiency of evidence we "will not reweigh the evidence nor resolve questions of the credibility of witnesses, but will look to that evidence and the reasonable inferences drawn therefrom which support the findings of the jury." *State* v. *McCarthy,* 197 Conn. 166, 179, 496 A.2d 190 (1985); *State* v. *Haddad,* 189 Conn. 383, 389, 456 A.2d 316 (1983). The evidence in this case was clearly sufficient to support the defendant's conviction.

II

The defendant's final claim concerns the trial court's admission of testimony about threats made to Gardner before he testified at trial. The following facts are relevant to this claim.

Gardner testified that the evening before the trial began, he had stopped at a convenience store in the Fair Haven section of New Haven. Upon leaving the convenience store, he was approached by two men. The

two men shoved Gardner against his car and said, "we have a message from [the defendant], don't show up tomorrow." Gardner did not know either of these men. He testified that no one except his parents knew that he would be testifying in this case. The defendant objected to this testimony, claiming it was irrelevant and prejudicial. The trial court admitted the testimony, finding it was relevant to the defendant's consciousness of guilt.

In order to admit threats made against a witness, the defendant must be "linked in some way to the making of the threats." *State* v. *Walker,* 214 Conn. 122, 129, 571 A.2d 686 (1990). If the threats are linked to the defendant, they are admissible "either on the theory that such conduct is inconsistent with the defendant's claim of innocence or on the theory that the making of such threats evinces a consciousness of guilt." Id. Before admitting such evidence, the trial court must determine that "its probative value outweighs its prejudicial tendency." *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982).

After reviewing the record, we conclude that the trial court did not abuse its discretion in allowing Gardner to testify about the threats he received. Furthermore, the trial court carefully and specifically instructed the jury as to the limited purpose for which the jury could consider the evidence of the threats. A jury is presumed to follow the trial court's instructions. *State* v. *Bowens,* supra, 655.

The judgment is affirmed.

In this opinion the other judges concurred.