## STATE OF CONNECTICUT *v.* KEITH JOHNSON
## (9851)

DUPONT, C. J., NORCOTT and FOTI, Js.

Argued December 11, 1991—decision released February 25, 1992

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *John Pannone,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, after a jury trial, of the crime of possession of cocaine with intent to sell by a person who is not drug-dependent, as an accessory, in violation of General Statutes §§ 53a-8 and 21a-278 (b).[1] He was sentenced to a term of ten years imprisonment, suspended after five years, with five years of probation. The sentence was to run consecutive to a sentence already being served. On appeal, the defendant argues that his conviction should be overturned because (1) a trace or residue of a narcotic substance does not constitute possession under the applicable statutes, and (2) the evidence was insufficient to support his conviction. We affirm the judgment.

The jury could reasonably have found the following facts. On May 3, 1989, two police officers, Keith Turgeon and Clemente Delacruz, were working undercover in an area of New London that is known to have a high incidence of drug trafficking, particularly the sale of crack cocaine. Both officers had had special training and had made numerous drug-related arrests.

At approximately 6:20 p.m., the defendant called to the officers, who were sitting in a car in a parking lot. Waving and gesturing to them to come to him, he stated "Come here, you want something?" He was approximately fifteen to twenty yards away from the officers and Delacruz recognized him. Turgeon approached the defendant and was told to meet him in a nearby city building. Turgeon entered through the front door of the building while the defendant entered through the back door. They met in the back hallway

---

[1] At the close of evidence but before the charge to the jury, the state withdrew a second count charging criminal attempt to commit robbery in the second degree in violation of General Statutes §§ 53a-135 (a) (1) and 53a-49 (a) (1). The jury found the defendant not guilty of a third count charging conspiracy to commit robbery in the second degree in violation of General Statutes §§ 53a-48 and 53a-135 (a) (1).

of the first floor. Delacruz remained outside the building. The defendant asked Turgeon if he wanted any "bottles." Turgeon understood this term to mean crack cocaine, and Turgeon responded that he would like two bottles. The defendant said "No" and again asked "How many do you want?" Turgeon responded that he wanted three bottles. The defendant then instructed Turgeon to accompany him to the parking lot to pick up the bottles.

They then walked to a small automobile parked approximately forty to fifty yards from the building. Two men, Fred Seaburg and Henry Covey, were in the front seat of the car. The defendant got into the back seat and told Turgeon that the price for the vials of crack would be $55. Seaburg, who was in the driver's seat, reiterated that the price would be $55. When Turgeon displayed some money, Covey removed a vial from his pocket. Upon seeing the vial, Turgeon identified himself as a police officer. Covey exited the vehicle and ran a few steps, but stopped at Turgeon's command. He then returned to the car and joined the defendant and Seaburg who had been ordered to exit the vehicle and lie facedown on the ground. While on the ground, Covey reached into his left pants pocket, pulled out the vial and tossed it underneath the car. When Delacruz arrived, Turgeon recovered the vial which was clear plastic and contained traces of a white rock substance. On the basis of his experience and training, Turgeon believed the substance to be crack cocaine. Delacruz field-tested the powder and observed a positive reaction for cocaine. The cocaine residue in the vial was not weighed. At trial, the toxicologist who testified on behalf of the state could not say definitively that the amount was sufficient to give someone a high. He noted, however, that the amount was not a normal dosage that someone would use to get high.

There was also testimony at trial that crack cocaine is packaged in small vials that sell for $20 to $25 each and that the street term for such a vial is a "bottle." Sellers often approach potential buyers and ask if they are interested in purchasing anything. Sales typically take place in the hallways of buildings and parking lots.

The defendant first argues that a trace or residue of a narcotic does not constitute possession of that narcotic under General Statutes §§ 21a-277, 21a-278 or 21a-279. We have recently declined to require any minimum amount or any usability test for conviction for possession of cocaine in violation of General Statutes § 21a-279 (a). *State* v. *McCarthy,* 25 Conn. App. 624, 628–29, 595 A.2d 941, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991).[2] The defendant argues that in § 21a-279[3] the legislature used the phrase "any quantity of any narcotic substance" whereas in §§ 21a-277[4] and 21a-278,[5] the legislature used the terms "a narcotic substance" and "any narcotic substance." He argues that the omission of the phrase "any quantity of" from the "possession with intent" statutes is meaningful. We do not agree.

"[O]ur statutes proscribing illegal substances 'reflect convincingly a strong legislative policy directed toward the *complete* suppression of narcotics such as heroin

[2] During oral argument, the defendant recognized that *State* v. *McCarthy,* 25 Conn. App. 624, 595 A.2d 941 (1991), released subsequent to his brief's being filed, clearly would apply to straight possession cases but should not be applied or extended to sale or possession with intent to sell cases. He also asks that we reconsider our decision in *McCarthy.*

[3] General Statutes § 21a-279 provides in pertinent part: "(a) Any person who possesses or has under his control any quantity of any narcotic substance . . . ."

[4] General Statutes § 21a-277 provides in pertinent part: "(a) Any person who . . . sells . . . or . . . possesses with the intent to sell . . . a narcotic substance . . . ."

[5] General Statutes § 21a-278 provides in pertinent part: "(b) Any person who . . . sells . . . or . . . possesses with the intent to sell . . . any narcotic substance . . . ."

and cocaine.' " *State* v. *McCarthy*, supra, 630. Section 21a-278 (b) does not set forth a minimum amount necessary for conviction of possession of a narcotic substance with intent to sell, but does mandate that if the substance is a cannabis-type, a defendant possess at least one kilogram to be convicted. This distinction in language demonstrates the legislature's intent that the amount of narcotic substance possessed is immaterial for conviction under this statute. We conclude that the state is required by statute to prove only that the narcotic substance that the defendant possessed and intended to sell be enough to be tested; the intent of the statutes is clear that any such amount will be sufficient to support a conviction. A person may be convicted of possession of a narcotic substance with intent to sell when that person knowingly possesses and intends to sell any narcotic substance, regardless of the amount or whether the amount is sufficient to give the buyer a "high."

The defendant next argues that the state presented insufficient evidence to support his conviction of possession of cocaine with intent to sell as an accessory. He argues that the element of an intent to sell may be proved by evidence such as the amount of illegal drugs found, the manner in which the illegal drugs are packaged, the amount of money found on the suspects, the area in which the illegal drugs are located, and statements made by the suspects. The defendant argues that none of these evidentiary factors supports the inference that he had an intent to sell.

The standard of review of the sufficiency of the evidence at trial is well established. "When reviewing claims of insufficient evidence, this court employs a two part analysis. 'First, we review the trial evidence, construing it in the most favorable manner reasonably possible to support the jury's verdict. Second, we ascertain whether any jury could reasonably have concluded that

the cumulative effect of the established evidence, and the inferences reasonably drawn from those evidentiary facts, established guilt beyond a reasonable doubt.' *State* v. *Bowens,* 24 Conn. App. 642, 646, 591 A.2d 433 (1991); *State* v. *King,* 216 Conn. 585, 600–601, 583 A.2d 896 (1990)." *State* v. *Taft,* 25 Conn. App. 578, 581, 595 A.2d 918, cert. denied, 220 Conn. 921, 597 A.2d 343 (1991). We must review the evidence in the light most favorable to sustaining the jury's verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State* v. *Lynch,* 21 Conn. App. 386, 400, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990).

While the physical circumstances surrounding a person's arrest may be important to determine whether an intent to sell may be inferred, so too are that person's statements and actions. "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Williams,* 202 Conn. 349, 357, 521 A.2d 150 (1987). The evidence of the statements and actions of the defendant, Seaburg and Covey, and the inferences to be drawn therefrom were such that the jury could reasonably have found that the men intended to sell crack cocaine to Turgeon.

Subsequent to his arrest, the defendant declared that he and his friends had planned to rob Turgeon, that is, to beat him up and take his money. He insists that his intent was to rob and assault Turgeon, not to sell him crack cocaine. Intent is a question for the trier of fact to decide. *Saradjian* v. *Saradjian,* 25 Conn. App. 411, 415, 595 A.2d 890 (1991). Here, the jury obviously found that the evidence indicated beyond a reasonable doubt that the defendant had an intent to sell crack cocaine.

The defendant entered the car, leaving Turgeon outside alone. When Turgeon displayed money, no one attempted to get out of the car to rob him. Neither the defendant nor his cohorts brandished a weapon, and Turgeon could have run away easily if challenged. From this evidence, or lack thereof, the jury could have reasonably concluded that the defendant and the other two intended to sell crack cocaine to Turgeon. The fact that only one vial was produced while Turgeon had agreed to purchase three did not prevent the jury from reasonably inferring an intent to sell.

The defendant further argues that a buyer of drugs would not want to purchase a vial containing only residue, and therefore a seller could not possibly sell one. From that premise, the defendant takes a big step in concluding that if there is no market for a vial with drug residue only, there cannot exist an intent to sell such a vial. Our function is not to speculate on what is a saleable item in the drug market. Under our statute, the intent of the seller, not the buyer, is controlling. The evidence of intent was sufficient to support the defendant's conviction as an accessory to the possession of a narcotic substance with intent to sell.

The judgment is affirmed.

In this opinion the other judges concurred.