## CHRISTOPHER TAFT *v.* COMMISSIONER OF CORRECTION
### (AC 15955)

O'Connell, C. J., and Spear and Dupont, Js.

Argued October 30, 1997—officially released January 20, 1998

*Todd A. Edgington,* assistant public defender, for the appellant (petitioner).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Christopher Alexy*, assistant state's attorney, for the appellee (respondent).

DUPONT, J. The petitioner appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. We affirm the judgment.

The petitioner claimed that he was denied effective assistance of counsel as guaranteed under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. He alleged that he was denied the effective assistance of counsel by his trial attorney's failure (1) to use certain allegedly exculpatory material, (2) to request the trial court to instruct the jury with a missing witness charge pursuant to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), and (3) to object to certain hearsay evidence regarding the description of the weapon the petitioner allegedly used in the commission of the crimes of which he was convicted. The petitioner also claims that the habeas court improperly excluded a private investigator's report as hearsay.

Following a jury trial, the petitioner was convicted of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49, and carrying a pistol without a permit in violation of General Statutes § 29-35.[1] The trial court, *Schimelman, J.*, imposed a total effective prison sentence of seventeen years. The charges stemmed from an incident in which the petitioner fired four shots from a handgun at Sylvester Gardner, Jr., the former boyfriend of the petitioner's girlfriend, Robin Stanford. This court

---

[1] The petitioner was acquitted of a charge of burglary in the second degree in violation of General Statutes § 53a-102 (a).

affirmed the petitioner's convictions on direct appeal. See *State* v. *Taft*, 25 Conn. App. 578, 595 A.2d 918, cert. denied, 220 Conn. 921, 597 A.2d 343 (1991).[2]

The petitioner initially was represented by special public defender Karen Goodrow. In preparation of the petitioner's defense, Goodrow hired James Byrd, a private investigator. In the course of his investigation, Byrd interviewed Stanford and obtained a statement from her in which she alleged that the petitioner had discharged his handgun into the air. This statement contradicted Stanford's earlier tape-recorded, transcribed

---

[2] In *State* v. *Taft*, supra, 25 Conn. App. 580–81, this court noted the facts underlying the petitioner's conviction: "In the early morning hours of June 10, 1987, the victim, Sylvester Gardner, Jr., was parked in a car with his former [girlfriend], Robin Stanford, in front of her residence at 36 Tilton Street in New Haven. While sitting in the car with the window rolled down, Gardner felt something touch his head and then heard a voice [say,] 'I ought to blow your . . . brains out.' Gardner turned and saw a black gun pointed at him from outside the car. Gardner identified the voice as belonging to the [petitioner], with whom he was acquainted. Gardner testified that the length of the gun's barrel was less than twelve inches. Stanford then left the car and was followed by the [petitioner] as she returned to her apartment. As Gardner was driving away, the [petitioner] pointed his gun at him. Gardner saw three flashes from the gun and heard three pops, but none of these shots hit him or his car.

"Gardner then decided to return to Stanford's apartment. Outside Stanford's apartment, Gardner saw the [petitioner] climbing up the front porch of the apartment. While running upstairs to Stanford's apartment Gardner heard screams. As Gardner approached the apartment, he saw the [petitioner] leave the apartment and run past him. Gardner then pursued the [petitioner], whereupon the [petitioner] turned and fired a shot at Gardner from about thirty feet. Again, Gardner saw a flash and heard a pop but was not hit.

"Officer Brian Donnelly of the New Haven police department arrived at the scene. After questioning Gardner and other witnesses about the incident, Donnelly searched the area for a .38 caliber snub nose revolver but was unable to find it. Donnelly was not able to find any spent bullet casings from the described gunfire, nor was he able to find any bullets or bullet holes in the victim's car. Donnelly testified that casings from a .38 snub nose revolver would have to be manually ejected from the gun's cylinder. Donnelly also testified that the failure to find bullet casings or holes was common when investigating a shooting scene. The [petitioner] possessed neither a state nor a city permit to carry a pistol."

statement given to Officer Brian Donnelly of the New Haven police just after the June 10, 1987 shooting, in which she alleged that the petitioner had fired four shots *at Gardner*. Byrd submitted a written investigative report to Goodrow, which included Stanford's statement that the petitioner had fired the gun into the air. After discussing the report with the petitioner, and in light of the information provided in the report, Goodrow's theory of defense was that the petitioner had fired the gun into the air merely to scare Gardner, with no intent to harm him.

Prior to trial, Goodrow was discharged from the case and the petitioner's mother hired Patricia Buck Wolf as private counsel to represent the petitioner. The petitioner discussed Stanford's statement to Byrd with Wolf and indicated to her that he wanted Stanford to testify. Wolf told the petitioner that Stanford would not be a favorable witness for the defense because she had been Gardner's girlfriend and because she would testify as to the petitioner's use of a firearm.[3] Consequently, Wolf did not call Stanford to testify at the petitioner's trial.

At the habeas hearing, the petitioner was allowed to admit into evidence transcripts of the trial relating to (1) the testimony of Donnelly and (2) the trial court's jury charge. Through the transcripts of Donnelly's testimony, the petitioner established that Donnelly was dispatched to Stanford's apartment to investigate a shooting. After speaking with Stanford, Gardner and two other persons living in the apartment building, Donnelly searched the area for a black .38 caliber snub nosed revolver with a wooden handle. The state did not present evidence that Donnelly had personal knowledge of the handgun's appearance. Wolf did not, however, raise a hearsay objection to Donnelly's description of the gun.

---

[3] At trial, the petitioner testified that he had not used a handgun but, rather, had thrown a carpenter's hammer at Gardner.

Through the transcript of the jury charge, the petitioner also established that the trial court did not instruct the jury that it could draw an adverse inference against the state from its failure to call Stanford as a witness pursuant to the *Secondino* case.[4] The petitioner called Wolf as a witness at the habeas hearing. Wolf testified that she was not familiar with the adverse inference rule as stated in *Secondino*. Wolf was also questioned with respect to her failure to object to Donnelly's testimony regarding the description of the weapon. Wolf conceded that she never objected to the testimony despite the state's failure to lay a proper foundation as to how the officer learned the details of the weapon's appearance.

I

The petitioner first claims that he received ineffective assistance of counsel due to his trial counsel's failure to investigate whether to use material that was potentially exculpatory. The standard to be applied by habeas courts in determining whether an attorney's representation of a criminal defendant was ineffective is set forth in *Strickland* v. *Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice." *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 445, 610 A.2d 598 (1992). Thus, he must establish both that the attorney's performance was so deficient as to be unreasonable under prevailing professional norms, and that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, supra, 694. The burden is on the petitioner

---

[4] Wolf's written request to charge filed with the trial court did not include an adverse inference instruction.

to establish that counsel's conduct fell below the *Strickland* standard. *Quintana* v. *Warden*, 220 Conn. 1, 5, 593 A.2d 964 (1991).

" 'A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice.' " *Pelletier* v. *Warden*, 32 Conn. App. 38, 46, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993). Here, the habeas court confined its analysis of the petition's ineffective assistance of counsel claim to the prejudice prong of the *Strickland* test. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* v. *Washington*, supra, 466 U.S. 691. "Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather, the defendant must show that there is a "reasonable probability" that the errors affected the outcome. Id., 694.

In the present case, the habeas court properly determined that the petitioner failed to sustain his burden of demonstrating that his counsel's failure to interview Stanford as a potential witness, in view of her statement to Donnelly, affected the outcome of the case. At the habeas hearing, the petitioner maintained that Stanford would have testified in accordance with her statement to Byrd that the petitioner had discharged the gun into the air rather than directly at Gardner. The evidence reveals, however, that Stanford made contradictory statements regarding the direction in which the gun had been fired. She originally told the police that the petitioner had discharged the gun *at Gardner*. Absent

proof that Stanford's testimony would have been consistent with her statement to Byrd and that that testimony likely would have changed the outcome of the trial, the habeas court properly concluded that the petitioner failed to prove prejudice from his attorney's alleged error. See *Andrews* v. *Commissioner of Correction*, 45 Conn. App. 242, 247–48, 695 A.2d 20, cert. denied, 242 Conn. 910, 697 A.2d 364 (1997) (petitioner failed to fulfill prejudice requirement with regard to trial counsel's failure to interview or attempt to interview certain potential witnesses where petitioner did not call those witnesses to testify at habeas trial or offer any other proof that their testimony would have been favorable to him).

## II

The petitioner next claims that he received ineffective assistance of counsel due to his trial counsel's failure to request the trial court to instruct the jury that it might draw an adverse inference against the state for its failure to call Stanford as a witness. A *Secondino* charge instructs the jury that " '[t]he failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' " *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675. Two conditions must be met to trigger the adverse inference under the *Secondino* rule: (1) the witness must be available, and (2) the witness must be one whom the party would naturally produce. Id.; *State* v. *Greene*, 209 Conn. 458, 470, 551 A.2d 1231 (1988).

The habeas court properly concluded that a *Secondino* charge was not warranted because the petitioner failed to establish that Stanford was available to testify. To satisfy *Secondino*'s availability requirement, the petitioner was obligated to provide evidence that

the state was "able to procure the witness' physical presence in the court." *State* v. *Taylor*, 23 Conn. App. 426, 431, 580 A.2d 1004 (1990). Because the petitioner failed to produce sufficient evidence as to Stanford's availability, the habeas court properly concluded that a *Secondino* charge was not warranted. Accordingly, the petitioner was unable to prove that trial counsel's failure to request the instruction was prejudicial to his defense.

## III

The petitioner claims that he received ineffective assistance of counsel due to his trial counsel's failure to object to allegedly inadmissible hearsay regarding the type of handgun used in the crime. Specifically, at the habeas hearing, the petitioner claimed that Donnelly's testimony regarding the physical characteristics of the handgun used in the crime constituted hearsay because the state failed to lay a foundation that such evidence was based on Donnelly's firsthand knowledge rather than on information relayed to him by the witnesses. The petitioner further claimed that counsel's failure to raise a hearsay objection to Donnelly's testimony constituted ineffective representation.

The habeas court resolved this issue by again focusing on the second prong of the *Strickland* test. The habeas court determined that the petitioner failed to establish prejudice because it found that there was substantial other evidence presented in the case establishing that the petitioner had possessed a gun on the day in question. Specifically, the habeas court noted that Gardner had testified that the petitioner had used a black firearm with a barrel less than twelve inches in length to fire four shots at him. Accordingly, the habeas court properly concluded that even absent the alleged hearsay evidence, "the petitioner would have still been found guilty of the crimes he was convicted of" and,

therefore, the petitioner failed to prove prejudice. We agree with the ruling of the habeas court that the petitioner has failed to meet the prejudice requirement articulated in *Strickland.* We affirm the habeas court's rejection of the petitioner's claim of ineffective assistance of counsel.

## IV

We next address the petitioner's claim that he should be granted a new habeas trial because the habeas court would not allow into evidence the investigative report regarding Byrd's interview with Stanford. The petitioner claims that the report was admissible to prove the existence of the statement made by Stanford in the report rather than for the truth of that statement. He argues that the very existence of the statement shows the ineffective assistance of counsel. Certain additional facts are necessary for a proper resolution of this claim.

At the habeas hearing, Byrd testified that (1) he interviewed Stanford in the course of his investigation, (2) shortly after the interview he made a written report of what Stanford told him, (3) it was his regular practice to make a written report after interviewing a witness, and (4) he gave his written report to the petitioner's former attorney, Goodrow. When the petitioner's counsel produced a document marked as plaintiff's exhibit D for identification, Byrd identified it as a "reconstructed" version of his original report submitted to Goodrow in 1988. Byrd explained that he did not have the original report so he re-created the report from notes that he had kept from his interview with Stanford in 1988. Byrd further testified that the reconstructed report was a fair and accurate representation of the original report.

It is not clear from the transcript of the habeas proceeding what the ground was for the state's objection to the introduction into evidence of the report. The habeas court sustained the objection of the respondent,

however, on the ground that the record contained hearsay and that the petitioner had failed to qualify the reconstructed report under the business record exception to the hearsay rule. On appeal, the petitioner does not argue that the report was admissible as a business record. We, therefore, do not reach the question of whether the report should have been admitted pursuant to General Statutes § 52-180.[5]

There was no dispute in this case that the report existed, nor was there any dispute that Wolf knew about the report and that Stanford had given Byrd a statement. At the habeas hearing, the petitioner testified that the report existed, that Wolf had been furnished with a copy of the report, and that he and Wolf discussed the report on several occasions. Further, evidence of the contents of the report was introduced through Goodrow's testimony. Specifically, Goodrow testified that the report she received from Byrd in 1988 indicated that Stanford had told Byrd that the petitioner had fired the handgun into the air rather than at Gardner. Accordingly, the petitioner cannot demonstrate that the exclusion of the report impaired his ability to support his habeas claim that Wolf rendered ineffective assistance of counsel. We conclude that the outcome of the habeas proceeding was not affected by the ruling on the admissibility of the report, and that the petitioner is not entitled to a new habeas hearing.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."