******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JERRY MCNEIL
(AC 34491)

Alvord, Mullins and Bear, Js.

*Argued November 13, 2014—officially released January 13, 2015*

(Appeal from Superior Court, judicial district of Hartford, geographical area number twelve, C. Taylor, J.)

*Scott Jongebloed*, certified legal intern, with whom were *Timothy H. Everett*, assigned counsel, and, on the brief, *Kurt Young* and *Erica Barber*, certified legal interns, for the appellant (defendant).

*Maria del Pilar Gonzalez*, deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Alexander C. Beck*, assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Jerry M.L.K. McNeil, appeals from the judgments of conviction, rendered following a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a), possession with intent to use drug paraphernalia in violation of General Statutes § 21a-267 (a), and larceny in the sixth degree in violation of General Statutes § 53a-125b.[1] The defendant claims that (1) the evidence was insufficient to sustain his convictions; (2) as applied to the facts of this case, § 21a-279 (a) is unconstitutionally vague; and (3) there is a reasonable possibility that the court misled the jury when it gave an inadequate response to a jury question. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On the evening of September 9, 2011, Officer David Goncalves of the east central narcotics task force of the Glastonbury Police Department (department) was on patrol in an unmarked police vehicle. Goncalves had been trained in undercover narcotics work, including classes in drug paraphernalia and cocaine, and had made hundreds of narcotics related arrests. At approximately 9:30 p.m., as Goncalves was patrolling Main Street, he saw two men talking to the defendant, who was in the driver's seat of a vehicle bearing Colorado license plates. The two men were standing outside of the vehicle. The vehicle was in an unlit parking lot next to some businesses that were closed. Goncalves checked the vehicle's registration through the Department of Motor Vehicle's files, which revealed that the vehicle previously had been registered to a female, but that the registration had expired more than one year prior. At that point, Goncalves saw the two men enter the vehicle, and the defendant drove away. Goncalves then initiated a motor vehicle stop on Main Street. For safety reasons, Goncalves also called for backup.

When Goncalves approached the vehicle, he explained the reason for the stop and asked the defendant for his driver's license, the vehicle's registration and his insurance card. The defendant produced a valid Colorado driver's license and an expired insurance card, but he had no registration for the vehicle. He told Goncalves that he owned the vehicle, having purchased it at an auction. Goncalves then asked the defendant if anyone else had use of the vehicle, and the defendant said no. Per department policy, Goncalves told the defendant that the vehicle would have to be towed, and he proceeded to conduct an inventory search of the vehicle to collect any high value items for safekeeping. In the trunk of the vehicle, Goncalves found Connecticut registration plates, which the Department of Motor Vehicles had listed as stolen approximately seven or eight days prior. He also found what appeared to be a miniature CD case, which actually was a digital scale, containing what Goncalves suspected to be cocaine

residue.[2] Goncalves knew through his experience and training that the purpose of these types of scales is for weighing narcotics in order to sell them. Goncalves secured the evidence, the defendant's vehicle was towed, and the defendant was arrested.

The scale was sent to the state's controlled substance laboratory for the Department of Emergency Services and Public Protection, where testing was conducted by a chemist, Laura Grestini. Prior to the testing, Grestini saw a small amount of white powder on the scale when she opened it. She tested that substance, and the testing confirmed that the white powder, in fact, was cocaine.[3]

Following a jury trial, the defendant was convicted of possession of narcotics, possession with intent to use drug paraphernalia, and larceny in the sixth degree.[4] This appeal followed.

I

On appeal, the defendant first claims that the evidence was insufficient to sustain his convictions of (A) possession of narcotics and possession with intent to use drug paraphernalia, and (B) larceny in the sixth degree. He argues: "The evidence was insufficient to prove beyond a reasonable doubt that [he] had dominion and control over the items in the trunk, that he knew they were there, that he knew that there was residue on the scale, and that he knew that the residue was cocaine."

The defendant further argues that the state's case was weak: "There was no evidence establishing *when* the defendant purchased the vehicle at auction or the identity of the registered owner of the vehicle.[5] There was no evidence presented as to the make of the vehicle, or the layout of the interior of the vehicle. There was no evidence whether the trunk of the vehicle was accessible from the passenger compartment. There was no evidence whether the trunk locked or was accessible only with a key. The state did not offer any fingerprint evidence of the items in the trunk. . . . In sum, *there was minimal evidence* in this case from which to infer that the defendant knew of and possessed the stolen marker plate[s], drug paraphernalia and cocaine on the paraphernalia in the trunk of the vehicle he was driving." (Citation omitted; emphasis altered; footnote added.) We conclude that even if the evidence "was minimal," it was sufficient.[6] See generally *State* v. *Varela*, 115 Conn. App. 531, 537, 973 A.2d 156 (scant evidence sufficient to sustain conviction), cert. denied, 294 Conn. 913, 983 A.2d 852 (2009).

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that

the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable." (Internal quotation marks omitted.) *State* v. *Jordan*, 314 Conn. 89, 106–107, 101 A.3d 179 (2014).

"[An] appellate court's first task, in responding to a claim of evidentiary insufficiency, is to apply the traditional scope of review to the evidence. That requires that . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict. . . . We note that a claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Butler*, 296 Conn. 62, 77, 993 A.2d 970 (2010).

A

The defendant claims that the evidence was insufficient to sustain his conviction of possession of narcotics and possession of drug paraphernalia for two reasons. First, he argues that there was no evidence that he was aware of anything in the trunk, including the scale or what was on the scale. Thus, he contends that the evidence did not support the jury's conclusion that he knowingly possessed the items located in the trunk.

Second, the defendant argues that, even if there had been evidence sufficient to establish that he was aware of the contents of the trunk, including the scale, his simply being aware of the scale, standing alone, was insufficient to support a conviction for possession of narcotics. More specifically, the defendant argues that, because the scale contained only a tiny, unmeasurable or microscopic amount of cocaine residue, that miniscule amount, by itself, was insufficient to prove that he knowingly possessed narcotics because, in this case, a chemist had to use sophisticated testing methods to ascertain that the substance, in fact, was cocaine. He explains that he is not arguing that residue on a scale could not satisfy the "any quantity" aspect of § 21-279 (a), but, rather, that he is arguing that there needs to be more than just mere microscopic residue to demonstrate that a suspect knew that the residue was on the scale and knew the narcotic character of the residue. We are not persuaded.

Section 21a-279 (a) provides: "Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

Section "21a-279 (a) neither contains nor implies any minimum amount or usability exception to its prohibition against the possession of illegal narcotics." *State* v. *McCarthy*, 25 Conn. App. 624, 629, 595 A.2d 941, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991). Nevertheless, in *McCarthy* we explained that "[a]lthough we are mindful of the . . . concerns about prosecutions based on microscopic amounts of illegal narcotics, the legislature has opted to rely in such cases on the judgment of prosecutors. Courts provide a check on the state's accusatory powers, but we will not substitute our judgment for that of a prosecutor with respect to which cases should be tried and which are insignificant through the veil of a threshold amount or usability requirement not contained in § 21a-279 (a)." Id., 630.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . [T]he test for illegal possession of drugs is that the accused must know that the substance in question is a drug, must know of its presence and exercise dominion and control

over it. . . .

"Importantly, [k]nowledge of the presence of narcotics and control may be proved circumstantially. . . . Knowledge that drugs are present and under a defendant's control when found in a defendant's home or car is more easily shown, of course, if the defendant has exclusive possession of the area in which the drugs are found. The difficult cases, such as the present one, arise when possession of an area, such as a car or home or an apartment, is shared with another person or persons. In situations in which the putative offender is not in exclusive possession of the premises where the narcotics are found, we may not infer that he or she knew of the presence of the narcotics or that he or she had control over them, without incriminating statements or circumstances to support that inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Slaughter*, 151 Conn. App. 340, 345–47, 95 A.3d 1160, cert. denied, 314 Conn. 916, 100 A.3d 405 (2014).

In the present case, the defendant puts much time into, and much emphasis on, distinguishing his case from *State* v. *McCarthy*, supra, 25 Conn. App. 624. He argues that in *McCarthy*, the police had witnessed the defendant with narcotics, but, as they approached the defendant, he threw the narcotic substance into the air, and the police were able to recover only a small trace amount of the substance, which later proved to be cocaine. He contends that although the trace amount of narcotics was sufficient to support a conviction of possession in *McCarthy*, there was no question that the defendant knew that he possessed the substance in that case; he was about to use it, and he tried to dispose of it when he saw the police. To the contrary, he argues, in the present case, there was no evidence that the defendant had *knowledge* of the character of the residue found on the scale.

The defendant also argues that knowledge was not at issue in *State* v. *Johnson*, 26 Conn. App. 779, 783, 603 A.2d 440 ("[a] person may be convicted of possession of a narcotic substance with intent to sell when that person knowingly possesses and intends to sell any narcotic substance, regardless of the amount or whether the amount is sufficient to give the buyer a 'high' "), cert. denied, 221 Conn. 925, 608 A.2d 690 (1992), because, in that case, "the defendant was apprehended with narcotics and disposed of them in the presence of the arresting officer." He argues that *McCarthy* and *Johnson* are distinguishable from the present case because, in those cases, the court did not have to consider the knowledge element of the possession charges. Finally, he "contends that a tiny quantity of narcotics may yield an inference of knowledge only when taken with other evidence such as in *McCarthy* and *Johnson*. Here, though, there is no such evidence."[7] (Footnote omitted.) We disagree.

Despite the defendant's argument, in this case there was more evidence that the jury reasonably could have found established his knowing possession of narcotics than mere microscopic residue found in the trunk of a vehicle that the defendant was driving.[8] There is no dispute that there was cocaine visible as a white powder, that the cocaine was on a scale that is used for weighing narcotics in order to sell them, and that the cocaine and the scale were found in the trunk of a vehicle that the defendant said he owned. Additionally, the defendant was in the driver's seat of the vehicle at the time the officer discovered that the vehicle was unregistered and had Colorado license plates that had expired more than one year prior. After being pulled over by the officer, the defendant produced a valid Colorado driver's license and an expired insurance card. He also told the officer that he had purchased the vehicle at an auction, that it was his vehicle, and that no one else had use of the vehicle.

The evidence certainly established that the license plates on the vehicle, although expired, were from Colorado and that the defendant had produced for the officer a valid Colorado driver's license. In light of this evidence, it would not have been unreasonable for the jury to have concluded that the defendant had driven the vehicle from Colorado to Connecticut. The defendant also told the officer that no one else had use of the vehicle. Therefore, the jury reasonably could have concluded that the defendant exercised dominion and control over the trunk of his vehicle, as well as its contents. Furthermore, it would not have been unreasonable for the jury to have concluded that, because the defendant was the owner of the vehicle, which he likely had driven from Colorado to Connecticut, and he admitted to being the only person who had use of the vehicle, he was aware and had knowledge of the contents of the trunk and the presence of the scale containing cocaine. On the basis of the foregoing, we conclude that the jury reasonably could have found that the defendant had knowingly possessed and controlled the narcotics and the scale that were found in the trunk of his vehicle.

B

The defendant also claims that the evidence was insufficient to establish larceny in the sixth degree. He again argues that there was no evidence that he knew what was in the trunk of the vehicle, and he additionally argues that there was no evidence that he committed larceny. He contends that his "mere access to the trunk of the vehicle is an insufficient basis upon which to conclude that [he] committed larceny by intending to withhold a marker plate from its owner." For the reasons expressed in part I A of this opinion, we conclude that there was sufficient evidence that he knowingly possessed and controlled the items that were in the

truck of his vehicle, including the plates. We will examine, however, whether there was sufficient evidence that he intended to withhold the plates from their owner.

"Connecticut courts have interpreted the essential elements of larceny as (1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Sherman*, 127 Conn. App. 377, 391, 13 A.3d 1138 (2011). "It is well settled . . . that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide. . . . Because larceny is a specific intent crime, the state must show that the defendant acted with the subjective desire or knowledge that his actions constituted stealing. A specific intent to deprive another of property or to appropriate the same to himself . . . is an essential element of larceny . . . and as such must be proved beyond a reasonable doubt by the state." (Citations omitted; internal quotation marks omitted.) *State* v. *Papandrea*, 120 Conn. App. 224, 230–31, 991 A.2d 617 (2010), aff'd, 302 Conn. 340, 26 A.3d 75 (2011).

Construing the evidence in the light most favorable to sustaining the verdict and with all inferences reasonably drawn therefrom, the jury reasonably could have found the following facts: (1) A set of license plates had been stolen from Manchester seven or eight days before they were discovered in the trunk of the defendant's vehicle; (2) the defendant owned the vehicle in which the plates were discovered; and (3) the defendant stated that no one else had use of the vehicle in which the plates were discovered. On the basis of these facts, we conclude that the jury reasonably could have inferred that it was the defendant who had put the stolen plates into the trunk of his vehicle with the intent to permanently deprive the owner of this property. Accordingly, the evidence was sufficient to sustain the defendant's conviction of larceny in the sixth degree.

## II

The defendant next claims that § 21a-279 (a) is unconstitutionally vague as applied to the facts of this case for two separate, but related, reasons.[9] First, he claims that the word "any" is not defined in the statute, and that the statute, therefore, does not give adequate notice

as to how small an amount of a narcotic substance would equal "any." In support of this claim, he argues that the statute does not demarcate when " 'any' becomes 'none' for purposes of felony liability," and he asks, "[w]hen does 'any quantity' become nothing at all or something so minimal . . . that it cannot reasonably satisfy the elements of knowing possession?" Thus, he contends that "[a] person possessing paraphernalia with microscopic remnants of cocaine is not on notice that he faces prosecution for a felony for failure to clean the paraphernalia more completely."

Second, the defendant claims that the statute is ambiguous and creates an unworkable standard by giving the police, the prosecution and the courts unfettered discretion. Specifically, he argues that "the ambiguity of the statutory text, 'any quantity,' as applied here provides an unworkable standard that promotes discriminatory and arbitrary enforcement of the law because the literal meaning of such a phrase can lead to frankly absurd results, including prosecution for possession of [United States] currency on which lab technician[s] commonly can find traces of narcotics." We are not persuaded.

Whether a statute is unconstitutionally vague presents a question of law over which we exercise plenary review. *State* v. *Winot*, 294 Conn. 753, 759, 988 A.2d 188 (2010). Our Supreme Court has explained that "[a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Internal quotation marks omitted.) Id.; see *State* v. *Chance*, 147 Conn. App. 598, 614, 83 A.3d 703, cert. denied, 311 Conn. 932, 87 A.3d 580, cert. denied,    U.S.   , 135 S. Ct. 169, 190 L. Ed. 2d 120 (2014).

The primary question here is whether the defendant had fair warning in 2011 that he could be prosecuted for possession of a narcotic substance on the basis of visible cocaine left on a scale that is known to be used

for weighing narcotics in order to sell them. On the basis of the clear language of the statute and the case law interpreting that statute, we conclude that he had sufficient warning.

Section 21a-279 makes criminal, except in clearly defined circumstances as set forth in that statute, the possession of "*any quantity of any narcotic substance* . . . ." (Emphasis added.) In 1984, our Supreme Court expressed in *State* v. *Connelly*, 194 Conn. 589, 593, 483 A.2d 1085 (1984), that the phrase " 'any quantity of any narcotic substance' " used in § 21a-279 is "*precise language emphasizing that possession of 'any' amount of a narcotic constitutes a crime* . . . ." (Emphasis added.)

More recently, in *State* v. *McCarthy*, supra, 25 Conn. App. 627–30, which was released in 1991, this court examined the "any quantity of any narcotic substance" language used in § 21a-279. There, we explained that "it is the majority view that *any* amount of a proscribed substance is sufficient to sustain a conviction for possession [of a narcotic substance]." (Emphasis in original.) Id., 628. On the basis of the clear language of § 21a-279 (a), we "decline[d] to require any minimum amount or usability requirement before a conviction may be had pursuant to § 21a-279 (a)." Id., 629. We further explained: Section "21a-279 (a) neither contains nor implies any minimum amount or usability exception to its prohibition against the possession of illegal narcotics. . . . When a statute provides for punishment in such unequivocal language and provides for no exceptions, it must be assumed that the legislature deemed that such enactment was necessary effectively to curb violation of the law, and we cannot impute to it an intent to make the statute less drastic and effective by adopting a strained construction of the language used, and reading into it an exception which does not there appear." (Internal quotation marks omitted.) Id., 629–30.

Additionally, we stated: "Moreover, our statutes proscribing illegal substances reflect convincingly a strong legislative policy directed toward the *complete* suppression of narcotics such as heroin and cocaine. . . . For this court to impose a minimum amount or usability requirement would so constrict and narrow § 21a-279 (a) as to frustrate the legislature's intention. Further, such a requirement would add uncertainty to the law. Courts that have adopted a minimum amount or usability standard have failed to offer any readily applicable definition of a usable amount. . . . The unwieldy nature of such a test counsels against any usability or minimum amount requirement." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 630.

On the basis of the clear language of the statute and the relevant precedent of our appellate courts, we con-

clude that the defendant had fair notice well before his arrest that a visible amount of cocaine remaining on a scale known to be used for weighing narcotics in order to sell them was a violation of § 21a-279 (a).

We also are unpersuaded by the defendant's argument that § 21a-279 (a) is vague as applied because "the police, prosecution, and the court had unfettered discretion in making this a felony possession case based solely on the presence of cocaine residue on the scale."

"[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement. . . .

"[M]any statutes proscribing criminal offenses necessarily cannot be drafted with the utmost precision and still effectively reach the targeted behaviors. Consistent with that acknowledgment, the United States Supreme Court has explained: The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. *Colten* v. *Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Winot*, supra, 294 Conn. 760.

As set forth previously in this opinion, in *McCarthy*, we explained: "Although we are mindful of . . . concerns about prosecutions based on microscopic amounts of illegal narcotics, the legislature has opted to rely in such cases on the judgment of prosecutors. Courts provide a check on the state's accusatory powers, but we will not substitute our judgment for that of a prosecutor with respect to which cases should be tried and which are insignificant through the veil of a threshold amount or usability requirement not contained in § 21a-279 (a)." *State* v. *McCarthy*, supra, 25 Conn. App. 630.

In the present case, despite the defendant's arguments about microscopic residue and trace amounts of narcotics that commonly can be found on our currency, the amount of narcotics in this case was not microscopic and invisible to the naked eye, and it was not found on a dollar bill in general circulation. The narcotic substance was cocaine found on a scale known to be used for weighing narcotics in order to sell them, and, although it was only a small amount of cocaine, it,

nonetheless, was visible as a white powder. The arresting officer, Goncalves, testified that the scale had residue on it when he discovered it. Grestini, the chemist who tested the scale, testified that it had a white powder on it, which, testing confirmed, was cocaine. Goncalves further testified when he was explaining the scale to the jury during the defendant's trial that the scale still contained "a little bit of suspected cocaine residue." We conclude, therefore, that in this case there was no risk of arbitrary and discriminatory enforcement because the plain language of § 21a-279 (a) provided sufficient guidance and notice to the defendant that he was prohibited from possessing the small amount of cocaine, visible as a white powder, that was found on a scale known to be used for weighing narcotics in order to sell them.

### III

The final claim of the defendant is that the court gave an inadequate response to a question asked by the jury during its deliberations, and that it is reasonably possible that such response misled the jury. The defendant does not claim that the supplemental instruction given by the court in response to the jury's question was erroneous in law. Rather, he claims that it was inadequate to address the jury's question because it failed to "tak[e] account of the full scope of the question" where the "jury's question combined the element of 'quantity' with the element of 'possession.' " He argues that "the jury should have been informed that the 'any quantity' element in the possession statute must be a quantity that the jury finds the accused controlled, knew to be present, and knew was cocaine—that is to say, it must be a quantity that the defendant knowingly possessed." The state argues that the court properly and fully instructed the jury with regard to each element of the possession charge during its final instructions and that it was not reasonably possible that the court's supplemental instruction misled the jury because the court properly answered the specific question asked by the jury. We agree with the state.

The record reveals the following additional facts. At the close of evidence, the court charged the jury, inter alia, on the elements of the crimes charged and the applicable definitions, including the definition of possession, constructive possession and knowingly. It is undisputed that the court's initial charge properly instructed the jury on the law. During deliberations, however, the jury sent a note to the court, asking: "Is there a minimum amount that constitutes possession of a narcotic?" After inviting counsel to make suggestions on a proper response to the jury's question,[10] the court recalled the jury and stated: "Now, the answer to [your] question is no, there is no minimum amount. So, with that response, ladies and gentlemen, I'll ask you to return back to your deliberations. Thank you very

much." The defendant claims that this supplemental instruction likely misled the jury because it was incomplete and did not address fully the jury's question.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Citation omitted; internal quotation marks omitted.) *State* v. *Santiago*, 305 Conn. 101, 190–91, 49 A.3d 566 (2012).

Practice Book § 42-27 provides: "If the jury, after retiring for deliberations, requests additional instructions, the judicial authority, after providing notice to the parties and an opportunity for suggestions by counsel, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions."

The defendant contends that the court's supplemental instruction likely misled the jury because the court did not explain that there needed to be an amount sufficient to establish that the defendant knowingly possessed the narcotic substance. The defendant cites to our decision in *State* v. *Fletcher*, 10 Conn. App. 697, 701, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988), in support of his contention. We are not persuaded.

*Fletcher* readily is distinguishable from the present case. The primary issue in *Fletcher* was "whether, when the trial court receives inquiries from the foreperson of the jury regarding the legal standards applicable to the facts of the case, it may decline to answer those questions or to clarify its instructions upon its determination that the inquiries were made for the benefit of less than the entire panel." Id., 698. We answered that question in the negative. Id., 705–706. We explained: "In evaluating a claim of constitutional error in the supplemental charge, we would normally review the charge as a whole to determine whether the jury could

reasonably have been misled. . . . Here, *there was no supplemental charge given* on reasonable doubt or self-defense. The inquiry of some members of the jury as to their confusion as to the law is manifest by the inquiry by the foreperson and makes evident the reasonable possibility that the jury was misled." (Citation omitted; emphasis added.) Id., 706.

In the present case, the court did not decline to answer the jury's question, as did the court in *Fletcher*. Rather, the court in this case answered the jury's question in precise fashion. The jury specifically asked whether there was "a minimum amount that constitutes possession of a narcotic." Despite the defendant's contention, the jury did not ask *what* constitutes possession; it asked whether there was a *minimum amount* that constitutes possession. In accordance with *State* v. *McCarthy*, supra, 25 Conn. App. 630, the court properly answered, "no, there is no minimum amount." See *State* v. *McCarthy*, supra, 629 ("§ 21a-279 [a] neither contains nor implies any minimum amount . . . to its prohibition against the possession of illegal narcotics"). Accordingly, we conclude that the court's supplemental instruction was correct in law and that it properly answered the precise question asked by the jury.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The defendant also was charged with and convicted of operation of a motor vehicle without minimum insurance in violation of General Statutes § 14-213b and operating an unregistered motor vehicle in violation of General Statutes § 14-12 (a). The defendant on appeal has not challenged these convictions.

[2] During Goncalves' testimony at the defendant's criminal trial, while he was examining and describing the scale for the jury, he stated that it still contained some suspected cocaine residue.

[3] The use of the word "residue" throughout this case by the officer and the parties creates, perhaps, some unnecessary confusion. A common dictionary definition of the term "residue" is as follows: "1. The remainder of something after removal of a part. 2. Matter remaining after completion of an abstractive chemical or physical process, such as evaporation, combustion, distillation, or filtration; residuum." American Heritage Dictionary (2d College Ed. 1985). Here, the chemist, Grestini, clearly testified that "on the inside on the scale, there was *the presence of cocaine*." (Emphasis added.) She also testified that the cocaine was visible as a white powder. Accordingly, the jury reasonably could have found that there was cocaine present on the scale, rather than mere residue.

[4] See footnote 1 of this opinion.

[5] We note that evidence was clear that the vehicle *was not registered* at the time the defendant was stopped, the prior registration having expired more than one year before the stop.

[6] Additionally, the defendant contends, and the state concedes, that the state needed to prove that the defendant was in constructive possession of the items in the trunk because there were two other individuals in the passenger area of the vehicle. Assuming, without deciding, that the defendant was not in exclusive possession of the trunk area, we, nonetheless, conclude that the evidence was sufficient to sustain his convictions.

[7] During oral argument, we specifically inquired whether the defendant would be making the same argument if the scale and the residue had been found on the driver's seat near the defendant. The defendant responded that in such a scenario, the evidence likely would be sufficient because the scale with the residue would be in plain view. Essentially, the defendant explained that, if the scale were by his side on the front seat of the vehicle, the evidence of knowledge would consist of more than mere residue. The

scale would be near him, within arm's reach and in plain sight. Therefore, it would be reasonable for the jury to infer that he knew what it was and what it contained. With the scale in the trunk, however, he contends that there exists only mere residue on a scale, with no evidence that he knew of the scale's existence or knew what was on the scale.

[8] By recognizing that there was more than mere residue in this case, we do not mean to imply that mere residue could not be sufficient by itself.

[9] The defendant acknowledges that his claim is unpreserved and seeks to prevail under the four conditions of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), for review of unpreserved claims of constitutional dimension. The claim is reviewable under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. The defendant, however, is unable to satisfy *Golding*'s third prong because he is unable to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

[10] The court asked counsel to suggest, for the record, an appropriate response to the jury's question, and the following colloquy occurred:

"[The Prosecutor]: Your Honor, in regard to the state, the state believes that the answer to [the jury's] question is, no, there is no required amount. It's any—any amount is sufficient.

"The Court: Counselor?

"[Defense Counsel]: Well, if your question is what language you are going to give the jurors [to answer] [t]heir question—if you could read their question . . . again, Your Honor. I apologize.

"The Court: All right. This question is: Is there a minimum amount that constitutes possession of a narcotic?

"[Defense Counsel]: Okay. I would request that the answer just be no, and not the language proposed by [the prosecutor] that the answer be—what was your request?

"[The Prosecutor]: Well, I said the answer would be no, that any amount is sufficient.

"[Defense Counsel]: Yeah. I would not add that language. I'd ask that you just answer no. And then we had a discussion, Judge, amongst [the prosecutor] and I and the court—well, I think the answer should be no, and I'll leave it at that.

"The Court: All right.

"[Defense Counsel]: I mean, we had discussions that maybe that type of answer and the amount of the drug is probative of the defendant's knowledge of its presence or that knowledge of it, the character of the evidence. And, at first, I was going to ask you to add that to the language of your answer. But, I think that's probably—well—so, that would be my first choice, but, in the alternative, I think the answer just should be no.

"The Court: All right. I've had an opportunity to review *State* v. *McCarthy*, [supra] 25 Conn. App. 624. I propose to tell the jury in response—when they come in, in response to your question, the answer is no, that there is no minimum amount, and leave it at that. All right, then. We'll bring in the panel."