******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# DILA HASSIEM *v.* O & G INDUSTRIES, INC.
## (AC 41794)

Lavine, Bright and Devlin, Js.

*Syllabus*

The plaintiff employee sought to recover damages from the defendant employer for personal injuries he sustained at work while cleaning equipment that allegedly resulted from the defendant's having intentionally created a dangerous condition that it knew with substantial certainty would result in injury to the plaintiff. The trial court granted the defendant's motion for summary judgment and rendered judgment for the defendant. The court concluded that the plaintiff's claim was barred by the exclusivity provision (§ 31-284 (a)) of the Workers' Compensation Act because the plaintiff failed to present a genuine issue of material fact to show that the defendant engaged in intentional conduct that it knew with substantial certainty would result in injury to him. The court determined, inter alia, that there was no information that the defendant's failure, prior to the plaintiff's injury, to install a lockout device it had previously required that would have activated and controlled the equipment was intentional or would cause injury. The court also determined that, in the months prior to the plaintiff's injury, the defendant had discussed with the plaintiff and other employees changes it was making for safety and other operational procedures, and that there was no evidence of a failure to follow safety regulations before the plaintiff's injury or that the defendant had disabled or changed any of its devices for any improper reason. On appeal to this court, the plaintiff claimed that the trial court improperly granted the defendant's motion for summary judgment because questions as to intent are to be decided by the trier of fact, and the defendant coerced him into cleaning the equipment and was deliberately deceptive in having failed to install the lockout device when it knew that the device was required to be used. *Held* that the trial court properly granted the defendant's motion for summary judgment, the plaintiff having failed to show that there was a genuine issue of material fact as to whether the defendant had the subjective intent to create a dangerous situation knowing that there was a substantial certainty he would be injured: there was no genuine issue of material fact that the defendant was not deliberately deceptive in failing to install the lockout device and did not subjectively believe the plaintiff's injury was certain to follow, as the defendant was aware, and informed its employees that it was aware, of the dangers posed by powerful machines that could accidentally be turned on, it informed its employees of its intention to install the lockout devices it had acquired and, although the defendant failed to install the lockout devices expeditiously, deception or a subjective intent to injure employees could not be inferred from that failure and was not sufficient to demonstrate the necessary intent to injure; moreover, there were no genuine issues of material fact as to the plaintiff's claim that he was coerced into cleaning the equipment, as the plaintiff presented no evidence that he previously had safety concerns about cleaning the equipment or that he could not complain about the dangerous procedure used to clean it in light of a complaint he had raised in the past with respect to another task he was asked to perform.

Argued January 9—officially released June 2, 2020

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendant's allegedly intentional creation of a dangerous workplace condition, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the court, *Brazzel-Massaro, J.*, granted the defendant's motion to strike; thereafter, the court granted the defendant's motion for sum-

mary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*John T. Bochanis*, for the appellant (plaintiff).

*Michael S. Lynch*, with whom was *Nicole A. Carnemolla*, for the appellee (defendant).

*Opinion*

LAVINE, J. Our Workers' Compensation Act (act); General Statutes § 31-275 et seq.; provides the exclusive remedy for an employee who sustains an injury that arises out of and in the course of employment, unless the employee can establish "an employer's subjective intent to create a dangerous situation with a substantial certainty of injury to the employee [thereby] avoiding application of General Statutes § 31-284 (a), the exclusive remedy provision of the [act] . . . ." (Internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 766, 176 A.3d 1 (2018). Decisions issued by this court and our Supreme Court repeatedly have stressed the need for this stringent rule to uphold the legislative intent underlying our workers' compensation scheme.

In the present matter, the plaintiff, Dila Hassiem, appeals from the summary judgment rendered by the trial court in favor of the defendant, O & G Industries, Inc., after concluding that the plaintiff's claim was barred by the exclusivity provision of the act. On appeal, the plaintiff claims that the court improperly determined that there were no genuine issues of material fact that the defendant did not engage in an intentional act knowing that there was a substantial certainty that the plaintiff would be injured. We affirm the judgment of the trial court.

There are no material factual disputes concerning the manner and nature of the injury the plaintiff sustained. The plaintiff was employed by the defendant at its asphalt production facility in Stamford. Once a year, the defendant performed routine maintenance of its equipment, including a horizontal auger in a trough that is used to transfer stone and sand in the making of asphalt. The defendant's employees turn power to the auger on and off in a control room. On December 27, 2011, Robert Buchetto, the defendant's maintenance supervisor, ordered the plaintiff to clean the auger and the trough.[1] The plaintiff was not aware that power to the auger was on when he prepared to clean it with a high pressure hose. He climbed a ladder to a platform above the auger, which had no protective barrier, and was pulling up the hose when he slipped and fell into the trough. The plaintiff's left leg was caught in the auger and severed above his knee. As a result of his injuries, the plaintiff applied for and received workers' compensation benefits.

The plaintiff commenced the present litigation in which he alleged that the injuries he sustained were a direct result of the defendant's intentionally having created a dangerous condition, knowing that the dangerous condition made his injuries substantially certain to occur. In response to the plaintiff's revised complaint,[2] the defendant filed a motion for summary judgment, claiming that there were no genuine issues of

material fact as to whether it "had a substantially certain belief that cleaning the auger would cause the plaintiff to sustain injuries." The plaintiff opposed the motion for summary judgment. Following the parties' submission of exhibits, numerous memoranda of law, and after oral argument, the trial court issued a comprehensive memorandum of decision on June 12, 2018. The court granted the defendant's motion for summary judgment, stating, in part, that the plaintiff had failed to present a genuine issue of fact to show that the defendant had engaged in intentional conduct knowing that there was a substantial certainty that the plaintiff would be injured while cleaning the auger. The court concluded that, "[b]ecause there is no intentional act that was substantially certain to cause serious injury, the exception to the [act] does not apply." The plaintiff, thereafter, appealed to this court. The central issue presented to us is whether the trial court properly determined that there were no issues of material fact as to the defendant's subjective intent to create a dangerous situation with a substantial certainty of injury to the plaintiff. We conclude that it did.

Before addressing the plaintiff's claim, we set forth the applicable standard of review and the principles that guide our analysis of an appeal from the granting of a motion for summary judgment. "Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002).

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"A material fact is a fact that will make a difference in the result of the case. . . . It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantial evidence

outside the pleadings to show the absence of any material dispute. . . . The party opposing summary judgment must present a factual predicate for his argument to raise a genuine issue of fact. . . . Once raised, if it is not conclusively refuted by the moving party, a genuine issue of fact exists, and summary judgment is inappropriate. . . . [A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . Demonstrating a genuine issue requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Citations omitted; internal quotation marks omitted.) *Martinez* v. *Premier Maintenance, Inc.*, 185 Conn. App. 425, 434–35, 197 A.3d 919 (2018).

"The fundamental purpose of summary judgment is preventing unnecessary trials. . . . If a plaintiff is unable to present sufficient evidence in support of an essential element of his cause of action at trial, he cannot prevail as a matter of law. . . . To avert these types of ill-fated cases from advancing to trial, following adequate time for discovery, a plaintiff may properly be called upon at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his cause of action." (Citations omitted; internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 822–23, 116 A.3d 1195 (2015). Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (Internal quotation marks omitted.) *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Scheirer* v. *Frenish, Inc.*, 56 Conn. App. 228, 232, 742 A.2d 808 (1999), cert. denied, 252 Conn. 938, 747 A.2d 3 (2000).

I

The plaintiff's appeal concerns the exception to the exclusive remedy provision of our workers' compensation scheme, § 31-284 (a), which provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . ." Our Supreme Court

consistently has "interpreted the exclusivity provision of the act . . . as a total bar to [common-law] actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 106, 639 A.2d 507 (1994) (*Suarez I*).

The exclusivity provision "represents a balancing of interest, insofar as the purpose of the act is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The act is to be broadly construed to effectuate the purpose of providing compensation for an injury arising out of and in the course of the employment regardless of fault. . . . Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a [common-law] tort action for [work-related] injuries in return for relatively quick and certain compensation." (Internal quotation marks omitted.) *Lucenti* v. *Laviero*, supra, 327 Conn. 774; *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 106, 491 A.2d 368 (1985) (same). "A damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. . . . Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the [l]egislature." (Internal quotation marks omitted.) Id. The "principle of exclusivity is not eroded, [however] . . . when the plaintiff alleges an intentional tort, in which case an employee is permitted to pursue remedies beyond those contemplated by the act." *Suarez I*, supra, 229 Conn. 115.

Our Supreme Court first recognized the narrow intentional tort exception to the act's exclusivity in *Jett* v. *Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979). In *Jett*, the court exempted from the exclusivity provision of the act an employer's tortious act of intentionally directing or authorizing another employee to assault the injured party. Id., 218–19. In *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 100–101, the court "declined to extend [the] intentional tort exception to [the] act's exclusivity provision to situations in which an injury resulted from the employer's intentional, wilful, or reckless violations of safety standards as established pursuant to federal or state laws." *Lucenti* v. *Laviero*, supra, 327 Conn. 775. "To bypass the exclusivity of the act, the intentional or deliberate . . . conduct alleged must have been designed to cause the injury that resulted." *Mingachos* v. *CBS, Inc.*, supra, 102. "[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is

not the equivalent of intent." (Internal quotation marks omitted.) Id., 103. Reckless misconduct differs from intentional misconduct, and an employee must establish that the employer *knew* that injury was substantially certain to follow its deliberate course of action. Id.

Our Supreme Court "elaborated on the contours of this substantial certainty standard as an alternative method of proving intent in *Suarez I* and [*Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) (*Suarez II*)], which arose from amputation injuries suffered by an employee who claimed that his foreman had forced him to clean out plastic molding machines while those machines were still running, and forbade him and other employees from using safer cleaning methods under threat of termination of their employment, despite the risk of injury to their hands." *Lucenti* v. *Laviero*, supra, 327 Conn. 775.

In *Suarez I*, the trial court granted the employer's motion for summary judgment "on the ground that the exclusivity provision of the act barred his claim, because he had introduced no evidence that the employer intended to injure him." Id., 776. The employee appealed and our Supreme Court further defined the substantial certainty exception, concluding that "intent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to flow from it. . . . A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue. . . . An intended or wilful injury does not necessarily involve the ill will or malevolence shown in express malice, but it is insufficient to constitute such an [intended] injury that the act . . . was the voluntary action of the person involved. . . . Both the action producing the injury and the resulting injury must be intentional. . . . [Its] characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. . . . The known danger involved must go from being a foreseeable risk which a reasonable man would avoid and become a substantial certainty." (Internal quotation marks omitted.) Id. The court reversed the summary judgment and remanded the case for further proceedings, concluding that it was a question for the jury to determine whether the employer's intentional conduct permitted an inference that the employer knew that there was a substantial certainty an injury would occur. Id., 777; *Suarez I*, supra, 229 Conn. 119.

On remand, the jury returned a verdict in favor of the employee under the actual intent standard, rather

than under the substantial certainty exception; the employer appealed. *Lucenti* v. *Laviero*, supra, 327 Conn. 777. In *Suarez II*, our Supreme Court "restated the substantial certainty test to emphasize that the employer must be shown *actually to believe that the injury would occur* . . . ." (Emphasis in original; internal quotation marks omitted.) Id. The court "described its decision in *Suarez I* as establishing an exception to workers' compensation exclusivity if the employee can prove either that the employer actually intended to injure the [employee] or that the employer intentionally created a dangerous condition that made the [employee's] injuries substantially certain to occur . . . ." (Internal quotation marks omitted.) Id., 777–78. The court stated that "[p]ermitting an employee to sue an employer for injuries intentionally caused to him constitutes a narrow exception to the exclusivity of the act. . . . Since the legal justification for the common-law action is the nonaccidental character of the injury from the . . . employer's standpoint, the common-law liability of the employer cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer *short of a conscious and deliberate intent directed to the purpose of inflicting an injury. . . . What is being tested is not the degree of gravity of the employer's conduct, but, rather, the narrow issue of intentional versus accidental conduct.*" (Emphasis in original; internal quotation marks omitted.) Id., 778–79.

In *Lucenti*, the Supreme Court noted that "it is now well established under Connecticut law that proof of the employer's intent with respect to the substantial certainty exception demands a purely subjective inquiry. . . . Put differently, satisfaction of the substantial certainty exception requires a showing of the employer's subjective intent to engage in activity that it knows bears a substantial certainty of injury to its employees." (Citations omitted.) Id., 779. The court, however, noted that intent is a question of fact "ordinarily inferred from one's conduct or acts under the circumstances of the particular case." (Internal quotation marks omitted.) Id., 780. Historically, there was a substantial body of Connecticut law rejecting an employee's claim of entitlement to the substantial certainty exception, but no decision described "the kind of evidence that would allow for an inference that an employer subjectively believed that employee injury was substantially certain to follow its actions." Id. The court, therefore, looked to other jurisdictions in which the substantial certainty exception was a common feature of workers' compensation law and found New Jersey law instructive. Id.; see *Millison* v. *E.I. du Pont de Neumours & Co.*, 101 N.J. 161, 178–79, 501 A.2d 505 (1985) (New Jersey's "leading decision articulating sub-

stantial certainty test").

"New Jersey courts engage in a [two step] analysis. First, a court considers the conduct prong, examining the employer's conduct in the setting of the particular case. . . . Second, a court analyzes the context prong, considering whether the resulting injury or disease, and the circumstances in which it is inflicted on the worker, [may] fairly be viewed as a fact of life of industrial employment, or whether it is plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [New Jersey Workers' Compensation Act]." (Internal quotation marks omitted.) *Lucenti* v. *Laviero*, supra, 327 Conn. 780–81.[3]

The New Jersey conduct prong of the substantial certainty test is closely akin to the factual inquiry Connecticut courts "undertake in determining whether the employer knew of a substantial certainty of employee harm . . . ." (Footnote omitted.) Id., 781–82. An employer's mere knowledge "that a workplace is dangerous does not equate to an intentional wrong. . . . [T]he dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework . . . is not circumvented simply because a known risk later blossoms into reality. [Courts] must demand virtual certainty." (Internal quotation marks omitted.) Id., 782. "In considering whether the totality of the circumstances indicates that the conduct prong is satisfied, New Jersey courts consider factors such as: (1) prior similar accidents related to the conduct at issue that have resulted in employee injury, death, or a near-miss, (2) deliberate deceit on the part of the employer with respect to the existence of the dangerous condition, (3) intentional and persistent violations of safety regulations over a lengthy period of time, and (4) affirmative disabling of safety devices."[4] (Footnote omitted; internal quotation marks omitted.) Id.

Our Supreme Court found that the body of New Jersey case law "applying the factors that guide the conduct prong of the substantial certainty exception demonstrates that proof of negligent or even reckless conduct will not suffice, and only the most egregious examples of employer conduct will defeat workers' compensation exclusivity." Id., 783. In addition, cases from other states "applying the substantial certainty doctrine are consistent with the factors applied in New Jersey." Id., 785. Importantly, the court found that Connecticut appellate decisions also are consistent with the New Jersey multifactor standard, "including our decisions that stand for the proposition that, although warnings to the employer regarding the safety of workplace conditions are relevant evidence, they do not, without more, raise a genuine issue of material fact to defeat summary judgment with respect to whether an

employer subjectively believes that its employee's injuries are substantially certain to result from its action." (Footnote omitted.) Id., 786.

The court in *Lucenti* noted that in *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 235, 819 A.2d 287 (2003) (adopting trial court's decision in *Stebbins* v. *Doncasters, Inc.*, 47 Conn. Supp. 638, 820 A.2d 1137 (2002)), the employees had presented evidence that the employer failed to follow warnings and recommendations from the University of Connecticut Health Center concerning air quality. *Lucenti* v. *Laviero*, supra, 327 Conn. 786–87. "Despite evidence that the [employer] received these warnings and did not follow them, the [trial] court ultimately held that the evidence submitted by the employees provided nothing more than a mere failure to provide appropriate safety or protective measures. . . . The [trial] court concluded that [t]he [employees'] submissions may show that the [employer] exhibits a lackadaisical or even cavalier attitude toward worker safety, but are bereft of evidence from which one might reasonably and logically infer that the [employer] believed its conduct was substantially certain to cause hypersensitivity pneumonitis in these [employees]. . . . Thus, the evidence did not establish that the employer believed that its conduct was substantially certain to cause injury to the employees, and the act's exclusivity provision barred the employees' claim." (Citations omitted; internal quotation marks omitted.) Id., 787.

The court in *Lucenti* also noted that in *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 446, 830 A.2d 372 (overruled in part by *Lucenti* v. *Laviero*, 327 Conn. 764, 788 n.10, 176 A.3d 1 (2018)), cert. denied, 266 Conn. 925, 835 A.2d 473 (2003), "an employee warned his supervisor that a lathe was not working properly. In response, the supervisor told the employee to be careful." *Lucenti* v. *Laviero*, supra, 787. The lathe malfunctioned and threw a piece of material that broke through a safety shield and struck the employee's arm, causing a severe laceration. Id. The employee presented evidence that the employer was aware that its employees operated the machine without the proper safety shield and had been warned of the dangerous condition. Id., 787–88. Nonetheless, the trial court concluded that, "[a]lthough the [employer's] failure (1) to repair the lathe, (2) to provide adequate butt blocks and shield guards, and (3) to alert employees to a policy regarding the use of the rotating table [from which the material that struck the employee was thrown] may constitute negligence, gross negligence or even recklessness, those allegations fail to meet the high threshold of substantial certainty . . . . The combination of factors demonstrated a failure to act; however, such a failure is not the equivalent of an intention to cause injury." (Internal quotation marks omitted.) Id., 788; *Sorban* v. *Sterling Engineering Corp.*, supra, 446.[5]

Our review of the trial court's thorough memorandum of decision in the present case discloses that the court was well aware of the stringent standard applicable to the substantial certainty doctrine when adjudicating the defendant's motion for summary judgment. The court discussed the evolution of the substantial certainty doctrine in *Suarez I*; *Suarez II*; *Stebbins* v. *Doncasters, Inc.*, supra, 47 Conn. Supp. 638; *Sorban* v. *Sterling Engineering Corp.*, supra, 79 Conn. App. 444; *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 91; and noted the factual distinctions and similarities between those cases and the facts of the present case. Most significantly, the court was knowledgeable with respect to the New Jersey hallmarks that define intentional acts and substantial certainty to injure that are at the heart of the exception to the exclusivity provision of the act.

In adjudicating the question posed by the defendant's motion for summary judgment, i.e., whether the plaintiff had provided evidence that there is a genuine issue of material fact that the actions of the defendant in giving the plaintiff the task of cleaning the auger intentionally created a dangerous condition and that there was a substantial certainty that the plaintiff would be injured, the court stated that, "[u]nder Connecticut law, proof of the employer's intent with respect to the substantial certainty exception demands a purely subjective inquiry. *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 118–20, 889 A.2d 810 (2006); *Stebbins* v. *Doncasters, Inc.*, supra, [263 Conn. 234]. Thus, in order to satisfy the substantial certainty exception, the plaintiff must show that the [defendant's] subjective intent was to engage in an activity that it knows bears a substantial certainty of injury to its employees. [*Suarez I* and *Suarez II*] established a heavy burden to demonstrate intentional acts."

The court noted the New Jersey multifactor framework that our Supreme Court found "particularly instructive": "(1) prior similar accidents related to the conduct at issue that have resulted in employee injury, death, or a near-miss, (2) deliberate deceit on the part of the employer with respect to the existence of the dangerous condition, (3) intentional and persistent violations of safety regulations over a lengthy period of time, and (4) affirmative disabling of safety devices. *Lucenti* v. *Laviero*, supra, 327 Conn. 782." (Internal quotation marks omitted.) Applying those factors to the facts of the case at hand, the court concluded that those facts did "not yield a showing that the [defendant] intentionally created a dangerous condition and that the condition was substantially certain to cause injury to the [plaintiff]."

More to the point, the court found that "there is no evidence of any prior similar accidents or any accident that occurred during the past years performing this same process to clean [the auger]. The plaintiff has not

provided any evidence that the defendant did anything to deceive or place the employees in a dangerous position. The plaintiff argue[d] that the defendant was to put in new lockout devices to activate and control the equipment, but there is no information provided that the failure to have them installed in the six months prior to the accident had been purposeful to either save time or money or that the lack of or initiation of these procedures was intentional or would cause injury. The failure to have the new device in place on this date, while possibly a sign of poor management, is not tantamount to the intentional conduct which is described by our courts. Interestingly enough, according to the plaintiff's deposition testimony, the defendant took the time with its employees to discuss various changes it was making for safety and other operational procedures just six months before this accident. The change which was to be made for the starting controls of the auger . . . was known to the plaintiff because he had been present in meetings which were obviously scheduled to discuss the operations the plant and new procedures. Unlike many of the cases discussed [in this memorandum of decision], the defendant in this case was taking positive action for oversight of the operations. Even prior to the discussion of the lockout device, the defendant had in place a procedure for the person cleaning the auger to determine that it was ready to turn on. There was no testimony that this had changed. The plaintiff offered this testimony and then could not remember specifically what he did or if the process was followed.

"The process at issue in this action did not, unlike other actions, involve direct contact with the auger . . . . Unlike [the *Suarez* cases], where the plaintiff was . . . cleaning the machine out with his hands while it was still running, or *Sorban*, where the machine was working and [something broke off] hitting the plaintiff, the operation here called for the machine to be off until the person cleaning it gave the approval to start it. If anything, the evidence presented by both parties as to training and oversight creates the image of negligence in the operation or a lackadaisical approach to the placement of the new process to the factory.

"It should also be noted that up until this accident there [were no violations of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. § 651 et seq.], no accidents, no verbal complaint by [the plaintiff] or any others, no evidence that the defendant chose to not install the lockout [devices] for purposes of saving money or time in the operation and, therefore, there was no deceitful or even improper purpose demonstrated by the plaintiff. . . .

"[T]here is no testimony or evidence that the placement of a checks and balance process would have created a different scenario. The plaintiff testified in his

deposition that there was a process that was followed, to his knowledge, which is [that] the [auger] would not go on until he or whoever was performing the cleaning would give a sign to begin it. The plaintiff testified at his deposition that his understanding was, if he saw the auger . . . on when he was preparing to clean [it], he would communicate to turn it off. He was not as clear in the affidavit he submitted to support the objection to the motion for summary judgment. The plaintiff was not clear as to whether the machine was on or off when he first climbed the ladder and, although he stated he does not recall, he cannot say that he failed to follow his own training and/or understanding to have it turned off at his signal.

"Lastly, there was no evidence or testimony of either a failure to follow safety regulations before this incident, a citing by any agency of particular safety violations, or even any knowledge of the existence of any safety concerns before this incident. As to the final step, there was absolutely no testimony that the defendant did anything to disable or change any device, including the starting of the auger, for any improper reason. These findings, which follow [our Supreme Court's decision in] *Lucenti*, lead to the conclusion that there was no intentional action by the [defendant] that was substantially certain to injure." (Internal quotation marks omitted.)

## II

In his appellate claim that the court improperly granted the defendant's motion for summary judgment, the plaintiff raises three issues: summary judgment was inappropriate because (1) questions regarding intent are questions of fact to be resolved by the trier of fact, (2) the defendant was deliberately deceptive by failing to install the lockout devices when it knew that they were required, and (3) the defendant coerced the plaintiff into cleaning the auger.[6] The claims are not persuasive.

### A

The plaintiff first claims that the court improperly rendered summary judgment because a party's intent is a question of fact for the jury to determine. The plaintiff is correct that, as a general proposition, intent is a question of fact for the trier of fact. E.g., *State* v. *Johnson*, 26 Conn. App. 779, 784, 603 A.2d 440, cert. denied, 221 Conn. 925, 608 A.2d 690 (1992). In the present case, however, there are no facts to substantiate the plaintiff's claim that the defendant intended to create a dangerous condition with substantial certainty to cause injury.

"To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.)

*Reynolds* v. *Chrysler First Commercial Corp.*, 40 Conn. App. 725, 729, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). To successfully oppose a motion for summary judgment when intent is at issue, a plaintiff must raise a necessary factual predicate to demonstrate a genuine issue of material fact regarding intent. E.g., *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 782–83, 196 A.3d 328 (2018).

"Although it is less demanding than the actual intent standard, the substantial certainty standard is, nonetheless, an intentional tort claim requiring an appropriate showing of intent to injure on the part of the defendant. . . . Specifically, the substantial certainty standard requires that the plaintiff establish that the employer intentionally acted in such a way that the resulting injury to the employee was substantially certain to result from the employer's conduct. . . . To satisfy the substantial certainty standard, a plaintiff must show more than that [a] defendant exhibited a lackadaisical or even cavalier attitude toward worker safety . . . . Rather, a plaintiff must demonstrate that [the] employer believed that its conduct was substantially certain to cause the employee harm. . . . Substantial certainty exists when the employer cannot be believed if it denies that it knew the consequences were certain to follow." (Citation omitted; internal quotation marks omitted.) *Binkowski* v. *Board of Education*, 180 Conn. App. 580, 589–90, 184 A.3d 279 (2018).

Our Supreme Court has held that "even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact. See, e.g., *Connell* v. *Colwell*, [214 Conn. 242, 251, 571 A.2d 116 (1990)] (summary judgment granted in issue of fraudulent concealment); *Dubay* v. *Irish*, 207 Conn. 518, 534, 542 A.2d 711 (1988) (summary judgment granted in issue of wilful, wanton or reckless conduct); *Multi-Service Contractors, Inc.* v. *Vernon*, 193 Conn. 446, 452, 477 A.2d 653 (1984) (summary judgment granted on questions of good faith and wilful misconduct)." *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 250, 618 A.2d 506 (1992); see also *Scheirer* v. *Frenish, Inc.*, supra, 56 Conn. App. 233–35 (summary judgment properly granted on question of employer's intent).

In support of his claim, the plaintiff argues that there are questions of fact regarding two of the factors the court was to consider in determining whether there was sufficient evidence as to the defendant's intent, namely, whether the defendant was deliberately deceptive with respect to installing the lockout devices and whether the defendant placed him under significant duress to clean the auger. For the reasons stated in part II B and C of this opinion, we disagree, as a matter of law, as to whether there were any genuine issues of

fact regarding the defendant's intent.

B

The plaintiff claims that there were genuine issues of material fact as to whether the defendant was deliberatively deceptive in failing to install the power lockout device for the auger. We disagree.

The following additional undisputed facts are relevant to this claim. Approximately six months prior to the plaintiff's accident, the defendant met with its employees at the facility and informed them that it would be installing power lockout devices on machinery. The lockout devices require the use of multiple keys to turn on the power to a machine. The plaintiff argues that the purpose of the lockout devices was to prevent a machine from being turned on without a number of employees with keys taking steps to initiate power. Although the defendant acquired the lockout devices, the devices were stored in the control room at the time of the plaintiff's injury. The plaintiff claims that the defendant's failure to install the devices, even though they were in its possession, was deliberate deception akin to disabling a lockout device.[7]

In its memorandum of decision, the court noted that the defendant had presented an affidavit from Anthony Damiano, a recently retired vice president of the defendant, who averred that there had not been any injuries at the Stamford facility and that cleaning the auger was performed two or three times per year for the past twenty years by many different employees. In addition, the court correctly noted: "[W]hat the plaintiff does emphasize as the basis for a finding of an intentional act is the failure to install a lockout system that would require multiple individuals to use a key to start the auger machine and the OSHA finding after the accident. [See footnote 6 of this opinion.] The [court in] *Lucenti* . . . stated that our appellate courts, consistent with the New Jersey multifactor standard, have found that, although warnings to the employer regarding the safety of workplace conditions are relevant evidence, they do not, without more, raise a genuine issue of material fact to defeat summary judgment with respect to whether an employer subjectively believes that an employee's injuries are substantially certain to result from its actions. The [court in] *Lucenti* . . . analyzed *Stebbins* v. *Doncasters, Inc.*, supra, 47 Conn. Supp. 640, where the employer failed to follow warnings and recommendations but the court determined this was nothing more than mere failure to provide safety or protective measures. . . . [T]he [court in] *Lucenti* . . . opined that such submission may have exhibited a lackadaisical attitude toward worker safety but that such a finding does not logically infer that the employer believed its conduct was substantially certain to cause injury to the employees. So, too, in the [present] action, the defendant did not install the lockout devices, but it is not

logical with the evidence in this action to find that the failure to do so was intentional conduct to injure the [plaintiff] with substantial certainty." (Internal quotation marks omitted.)

On the basis of our review of the record, we conclude that the court's analysis of the undisputed facts and the cases it relied on was proper. We, therefore, agree with the court's conclusion that there is no genuine issue of material fact that the defendant was not deliberately deceptive in failing to install the lockout devices and did not subjectively believe that the plaintiff's injury was certain to follow. There is no question that the defendant was aware of the dangers posed by powerful machines that could accidentally be turned on, causing injury to its employees. The defendant not only informed its employees that it was aware of potential danger and of its intention to install the lockout devices; it also had acquired the devices. Although the defendant may not have made a wise managerial decision by failing to install the lockout devices expeditiously—which is unclear from the record—one cannot infer deception or a subjective intent to injure employees from that decision. See *Sorban* v. *Sterling Engineering Corp.*, supra, 79 Conn. App. 457 (failure to act does not meet high threshold of intent to cause injury). Finally, failure to install safety devices promptly is markedly different from affirmatively disconnecting the safety devices, and the failure in this case is not sufficient to demonstrate the necessary intent to injure.

C

The plaintiff's third claim is that the court improperly granted the defendant's motion for summary judgment because there are genuine issues as to whether he cleaned the auger under duress. We do not agree.

On the basis of the plaintiff's testimony, the court noted that he had not been specifically trained to clean the auger. He, however, had performed the task the year before, and he had seen the cleaning performed by various employees at other times. He did not ask for direction or assistance because he was unclear as to how to perform the task. He did not complain that it was unsafe, and he provided no evidence that before the incident he believed he was performing a task that could even possibly lead to injury. The court stated: "This is unlike the plaintiffs who believed they would be fired if they did not do the job [as occurred in *Suarez I*. The plaintiff's] testimony about an unrelated job [he performed while working for the defendant] and the [related] innuendo for some actions does not rise to the level of being forced to perform the task. The plaintiff was not specific as to the details involving the prior verbal warning [he received], and without more there is no evidence that there is any similarity between the incidents. Interestingly, this belief by the plaintiff was never verbalized until [he was deposed], and even then,

he indicated that no supervisor gave him such a warning for this task. He also testified that he never complained, unlike the plaintiff in *Ducharme*,[8] and never asked to perform the task in a different manner." The plaintiff raised no genuine issue of material fact because he provided no evidence of any prior difficulties or injury that occurred in the years before the event at issue in this case.

On appeal, the plaintiff claims that there are genuine issues of material fact that he was coerced to clean the auger and that he could not complain about the dangerous procedure used to clean it. In his brief on appeal, the plaintiff points to a complaint he raised in the past with respect to another task he was asked to perform. On the basis of that experience, he claims that he believed that he could not raise his concerns about cleaning the auger. The plaintiff, however, presented no evidence that he previously had safety concerns about cleaning the auger. The trial court, therefore, found that the plaintiff's deposition testimony was insufficient to create an issue of fact that he was coerced to clean the auger. On appeal, the plaintiff has not pointed to any facts that cause us to disagree with the trial court's determination. The plaintiff, therefore, cannot prevail—despite his catastrophic injury—and we conclude that the court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In its memorandum of law in support of its motion for summary judgment, the defendant stated that the plaintiff, a nine year employee, was performing annual maintenance, which included cleaning "the industrial screw auger machine . . . to remove debris and other accumulated particles contained in the trough encasing the auger. [The annual cleaning] involved spraying pressurized water into the screw trough while a small section of the screw cover was uncovered and the screw was turning, so that the accumulated debris and particles along the trough could be pushed down and eventually out of the trough." The plaintiff does not dispute this description of the auger cleaning process.

[2] The defendant filed a motion to strike the plaintiff's original complaint on the ground that it failed to allege facts in support of an intentional act. The court granted the motion to strike, and the plaintiff pleaded over. The plaintiff's revised complaint is the operative pleading.

In paragraph 7 of the revised complaint, the plaintiff alleged: "The defendant established a policy and procedure whereby the auger machine would be cleaned without turning the power off whereby the defendant knew with substantial certainty that requiring employees to clean the auger machine with the power on would cause the plaintiff to be seriously injured. The defendant, through its established policy and procedure and by and through the defendant's assistant vice president, Raymond Bradford Oneglia, who oversaw the operation of the defendant's Stamford asphalt plant and the supervisors at the Stamford asphalt plant, including Robert Buchetto, ordered the plaintiff to clean out the operating, rotating auger machine with full knowledge that the exposed rotating auger would cause serious personal injury to the plaintiff if the plaintiff was caused to come into contact with the rotating auger."

[3] For a discussion of the context prong of the two step New Jersey analysis, see *Lucenti* v. *Laviero*, supra, 327 Conn. 781 n.7. Our Supreme Court declined to adopt the context prong as a matter of Connecticut law at that time, as it was not pertinent to the issue of intent to injure in *Lucenti*, which also is the case in the present matter. See id., 781–82 n.7.

[4] "With respect to decisions made to cut corners as to safety in order to

save time or money, the New Jersey Supreme Court considers a profit motive of only limited relevance, applicable only to critique an employer's long-term choice specifically to sacrifice employee safety for product-production efficiency." (Internal quotation marks omitted.) *Lucenti* v. *Laviero*, supra, 327 Conn. 782–83.

[5] See also *Martinez* v. *Southington Metal Fabricating Co.*, 101 Conn. App. 796, 798, 806–807, 924 A.2d 150 (testimony that employee's arm was crushed while positioning steel plate in metal bending machine was not sufficient to defeat summary judgment), cert. denied, 284 Conn. 930, 934 A.2d 246 (2007); *DaGraca* v. *Kowalsky Bros.*, *Inc.*, 100 Conn. App. 781, 791–93, 919 A.2d 525 (expert testimony that employer, given its experience, had to know of dangers of untested manholes was insufficient to defeat summary judgment), cert. denied, 283 Conn. 904, 927 A.2d 917 (2007).

[6] The court further found that there was no evidence that the defendant failed to follow safety regulations or even had knowledge of the existence of any safety concerns before the present incident. The court found "absolutely no testimony that the defendant did anything to disable or change any device, including the starting of the auger, for any improper reasons." The court concluded that these findings followed our Supreme Court's decision in *Lucenti* v. *Laviero*, supra, 327 Conn. 764, and led to the conclusion that there were no intentional actions by the defendant that were substantially certain to injure an employee.

The plaintiff does not claim that the court improperly determined that there was no evidence of a prior similar incident at the facility or that there were intentional and persistent violations of safety regulations over a lengthy period of time. We reject the plaintiff's claim that an intent to injure should be inferred from OSHA violations found at the facility after he was injured. *Lucenti* requires evidence of intentional and persistent violations of safety regulations over a prior lengthy period of time. See id., 782.

[7] In making this claim, the plaintiff compares the facts of the present case with the facts of *Lucenti* v. *Laviero*, supra, 327 Conn. 789. The *Lucenti* facts are wholly distinguishable. In *Lucenti*, the employer "rigged" the throttle of a malfunctioning excavator, rather than repair the piece of equipment. Id. But even under those facts, our Supreme Court concluded that the rigging of the excavator's throttle did not establish a genuine issue of material fact with respect to whether the "defendants believed there was a substantial certainty that the rigged excavator would injure the plaintiff or any other employee." Id., 790–91.

[8] In *Ducharme* v. *Thames Printing Co.*, Superior Court, judicial district of New London, Docket No. CV-09-6001312-S (May 5, 2015) (*Cole-Chu*, *J.*) (60 Conn. L. Rptr. 736), the plaintiff was a printing press operator, a position that required him to remove paper that jammed the press. Id., 737. On the day he was injured, he activated the safety features before attempting to remove paper, which should have prevented the press from turning back on. Id. As he reached into the press, he accidentally started the press, which resulted in injuries to his hand. Id. In denying the defendant's motion for summary judgment, the court found evidence that the press' multiple safety devices were not functioning and the manufacturer's safety guards had been removed. Id. Prior to being injured, the plaintiff had complained to his supervisor about the safety defects. Id., 739. His supervisor threatened him with the loss of employment if he did not perform and told the plaintiff that the defendant was not going to invest money in a machine it intended to replace. Id. The court concluded that a jury could infer from the evidence that the defendant knew of the safety issues, taking the case out of the exclusivity provision of the act. Id., 739–40.